ATTORNEYS FOR APPELLANT
Alan N. Shovers
Elizabeth A. Browning
Kevin R. Martin
Evansville, Indiana

ATTORNEYS FOR APPELLEE
John Burley Scales
Frank R. Hahn
Boonville, Indiana

# In the
# Indiana Supreme Court

No. 82S04-0510-CV-488

UNIVERSITY OF SOUTHERN INDIANA
FOUNDATION,

*Appellant,*

v.

RICHARD A. BAKER AND INTEGRA BANK
N.A. TRUST AND INVESTMENT MANAGEMENT
GROUP,

*Appellees*.

Appeal from the Vanderburgh Superior Court, No. 82D07-0403-TR-00112
The Honorable Terrell R. Maurer, Magistrate

On Petition To Transfer from the Indiana Court of Appeals, No. 82A04-0411-CV-592

**March 14, 2006**

**Boehm, Justice.**

We hold that the trust created by Marian Boelson left her tangible personal property and any interest she retained in her individual retirement accounts to her brother and gave the remaining assets to the University of Southern Indiana Foundation.

## Factual and Procedural History

In 1996 Marian Boelson created an inter vivos trust. Section 7 expressly declined to make any provision for Boelson's brother, Richard Baker, or any other potential intestate heirs. Section 8 provided a bequest of $50,000 to Faye Rucks, a friend of Boelson's, and Section 9 left the residue to the University of Southern Indiana Foundation ("USIF"). In August 2001, Boelson amended the trust, revoking Sections 7 and 8 and replacing them with new Sections 7 and 8:

> 7. Upon the death of Trustor, the Trustor's brother, Richard A. Baker, if living, shall receive any and all proceeds and assets that were held in Trustor's individual retirement accounts, if any, as well as, all of Trustor's automobiles, furnishings and other personal property.
>
> 8. After payment of [expenses of trust administration], the Trustee shall distribute to Trustor's friend, Faye Rucks, presently residing at 850 Cherokee Road, Henderson, Kentucky, the sum of Ten Thousand Dollars ($10,000.00), if living, and if not living, then said funds shall become part of the residue of the Trust and be distributed according to the terms and conditions set forth in Section 9 of this Trust Agreement.

No other substantial changes were made and the provision in Section 9 leaving the residue to USIF remained unchanged. Boelson died on August 29, 2003, leaving a will that poured her assets over into the trust. At death Boelson owned a condominium in Indiana, a one-acre lot in Florida, bank accounts, certificates of deposit, treasury notes, bonds, and two individual retirement accounts in which her brother was the designated beneficiary. There was also an automobile and tangible personal property (furniture, etc.) in the condominium.

Following Boelson's death, the trustee petitioned for an interpretation of the amended trust. No one challenged the $10,000 provision for Rucks, but Baker and USIF disagreed as to the disposition of the remaining assets. Baker alleged he was the beneficiary of all of the remaining personal property, and that USIF was the beneficiary of Boelson's real property only. USIF responded that the trust left Boelson's "personal effects" to Baker but gave all of Boelson's real property and all intangible personal property to USIF. USIF moved for summary judgment, designating the following affidavits and exhibits: (1) the affidavit of Boelson's attorney stating that "my understanding [was] that Mrs. Boelson intended for her brother to receive the personal property located in her residence;" (2) the affidavit of Boelson's trustee stating that Boelson told the trustee that Boelson hoped she would live long enough to see the gift to USIF grow to be

2

worth one million dollars; (3) the affidavit of Boelson's companion stating that Boelson had told him shortly before her death that after her death, USIF would receive almost all of Boelson's property, including her stocks; (4) typed instructions given by Boelson to her attorney which state, "Brother is beneficiary of and to receive two IRA accounts, automobile and any furnishings and personal property in the condo that he would like;" and (5) Boelson's attorney's handwritten notes stating "3. Item 7 – Brother now gets: 1. Both IRAS / 2. Auto / 3. furniture from residence / 4. other personal property in residence."

Based on USIF's affidavits and exhibits, the probate court concluded that Boelson's intention was to give the bulk of her personal property to USIF and to limit Baker to the IRAs, the automobile, and the household furnishings and personal effects in Boelson's condominium. However, the probate court concluded that because the language of the trust unambiguously devised "personal property" to Baker without limitation, it could not give effect to that intention. Specifically, the probate court held that the term "personal property" unambiguously encompassed all of Boelson's tangible and intangible personal property. The probate court therefore granted Baker's motion to strike USIF's designated evidence on the ground that the proffered evidence and exhibits were inadmissible parol evidence. The trustee was instructed to pay trust administration costs and to distribute $10,000 to Rucks, all remaining tangible and intangible personal property to Baker, and the real property to USIF. USIF appealed and the Court of Appeals affirmed. Boelson v. Baker (In re Boelson Trust), 830 N.E.2d 37, 45 (Ind. Ct. App. 2005). We granted transfer. Boelson v. Baker (In re Boelson Trust), 2005 Ind. LEXIS 981 (Ind. Oct. 20, 2005).

## I. Standard of Review

The interpretation of a will or trust is a question of law for the court. Merrill v. Wimmer, 481 N.E.2d 1294, 1297 (Ind. 1985). To the extent the evidence the parties offered is admissible, it is documentary. When reviewing a grant or denial of summary judgment, our standard of review is de novo. Freidline v. Shelby Ins. Co., 774 N.E.2d 37, 39 (Ind. 2002). Summary judgment should be granted only if the evidence authorized by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. Id.

3

## II. Interpretation of Boelson's Amended Trust

The primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention. Hauck v. Second Nat'l Bank of Richmond, 153 Ind. App. 245, 259, 286 N.E.2d 852, 861 (1972), trans. denied. Indiana follows "the four corners rule" that "extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." Hauck, 153 Ind. App. at 260, 286 N.E.2d at 861. Accordingly, where a trust is capable of clear and unambiguous construction, under this doctrine, the court must give effect to the trust's clear meaning without resort to extrinsic evidence. Baker argues that the trial court and the Court of Appeals correctly ruled that the trust unambiguously devises all personal property to him and therefore all property except the realty was properly distributed to him. USIF argues that the trust unambiguously devises only "personal effects" to Baker. We disagree with both Baker and USIF and conclude that the term "personal property" is ambiguous in the context of this trust instrument.

A document is not ambiguous merely because parties disagree about a term's meaning. Kelly v. Estate of Johnson, 788 N.E.2d 933, 935 (Ind. Ct. App. 2003). Rather, language is ambiguous only if reasonable people could come to different conclusions as to its meaning. Id. Baker argues that the trust contains no ambiguity. He is correct that the term "personal property" means "Any movable or intangible thing that is subject to ownership and not classified as real property." See Black's Law Dictionary 1254 (8th ed. 2004); accord Skinner v. Spann, 175 Ind. 672, 697, 93 N.E. 1061, 1070 (1911), reh'g denied, 175 Ind. 698, 95 N.E. 293 (1911) (concluding that the language "all personal property" included both tangible and intangible personal property). Baker cites the rule of construction that, particularly where an attorney familiar with technical terms has drafted an instrument, courts will give terms their technical meaning. Piersol v. Hays, 113 Ind. App. 214, 229, 47 N.E.2d 838, 844 (1943); Restatement Third of Property: Wills & Other Donative Transfers § 10.2 cmt. e (2003).

USIF also claims that the trust is unambiguous, but that "personal property" means "personal effects" and does not include cash, certificates of deposit or bonds. USIF cites authority for the view that courts should interpret terms in the context of the entire instrument and should

4

not give terms their technical meaning where it clearly appears that the testator did not intend to employ the terms in their technical sense. See Grise v. Weiss, 213 Ind. 3, 9, 11 N.E.2d 146, 149 (1937). USIF notes that the provision for Baker lists individual retirement accounts as well as Boelson's "automobiles, furnishings and other personal property" and argues that specific mention of the IRAs would be superfluous if Boelson intended "personal property" to include intangible property. We do not find that last point conclusive because Baker, not the trust, was the designated beneficiary of Boelson's IRAs. Presumably that beneficiary designation governs the disposition of the IRAs, whatever Boelson provided in her will or the trust. If so, the reference to the IRAs in the 2001 amendment to the trust can be viewed as similar to the 1996 provision that acknowledged Baker's existence but declined to make any provision for him.

USIF also argues that extrinsic evidence of the surrounding circumstances existing at the time the trust was amended, and known to Boelson, shows that Boelson intended to give only the individual retirement accounts, automobiles, furnishings, and other personal effects in her condominium to Baker. Indiana has long recognized that extrinsic evidence of the facts and circumstances known to the settlor and existing at the time of execution may be considered by a court when construing an instrument. Daugherty v. Rogers, 119 Ind. 254, 260, 20 N.E. 779, 781 (1889); accord Restatement Third of Property: Wills & Other Donative Transfers § 10.2 cmt. d. The rationale for admission of this evidence is that it is not offered for the purpose of contradicting the meaning of a written instrument, but is offered to "connect the instrument with the extrinsic facts therein referred to, and to place the court, as nearly as may be, in the situation occupied by the testator, so that his intention may be determined from the language of the instrument, as it is explained by the extrinsic facts and circumstances." Daugherty, 119 Ind. at 260, 20 N.E. at 781; see also Ragsdale v. Robinson, 219 Ind. 335, 341, 38 N.E.2d 570, 572 (1942); Hertford v. Harned, 185 Ind. 213, 219, 113 N.E. 727, 729 (1916).

Citing this doctrine, USIF points to the fact that the trust contained only intangible personal property at the time it was amended in 2001. USIF claims that Boelson did not transfer her Indiana condominium (or the tangible personal property it contained) into the trust until approximately one month after the trust was amended. Her Florida property was not conveyed to the trust until her death triggered the pourover provision in her will. According to USIF, if Baker is entitled to all of Boelson's intangible personal property, the gifts to USIF and Rucks

5

would have failed because, at the time the trust was amended, the only source of funds for the gifts to Rucks and USIF was Boelson's intangible personal property. USIF argues we should not adopt a construction of the trust that would defeat the gifts to Rucks and USIF. See In re Estate of Cashen v. Cashen, 715 N.E.2d 922, 925 (Ind. Ct. App. 1999) ("court[s] will consider and give effect to every provision, clause, term and word of [a] will when determining the testator's intent"). Assuming this evidence is admissible, it does not establish what USIF claims. The gifts to Baker, USIF, and Rucks were to be effective at Boelson's death, not at the time the trust was originally executed or the time it was amended. At Boelson's death, her will operated to transfer all her remaining property into the trust. The value of Boelson's real property exceeded $100,000. Accordingly, at the time she amended the trust, Boelson could expect that at her death the trust would contain real property from which gifts to USIF, Rucks, and Baker could be funded. In short, USIF is not correct that Baker's construction of the gift to him would necessarily frustrate other provisions in the trust. To the contrary, all of Boelson's tangible and intangible personal property could have been distributed to Baker and still leave Boelson's real property to fund the gifts to Rucks and USIF.

USIF makes a final argument that we find more persuasive. USIF points to the internal structure of the trust. USIF contends that the syntax of the provision for Baker limits the scope of property conveyed. Specifically, USIF argues that because "other personal property" appears as a more general item at the end of a list of specific tangible items (automobiles and furnishings), it should be interpreted to include only personal effects of like kind to the automobiles and furnishings. USIF points out that if "automobiles, furnishings and other personal property" means, as Baker contends, "all personal property," there is no need to name any single item. Moreover, the trust as amended called for the "personal property" to go to Baker under Section 7. Section 8 follows, calling for a gift of $10,000 to Rucks to be paid after the payment of the expenses of the trust, but not mentioning any antecedent provision for Baker. This fairly plainly contemplates that the earlier provision for Baker was not thought to have a higher call on available cash than the gift to Rucks, which was subordinate only to payment of administrative expenses. Though it is conceivable that a trust could be set up to give all intangible property to one beneficiary, and then provide for a specific cash devise to another to be funded by sale or borrowing against real property, if that were Boelson's intent, we think it highly probable it would have been spelled out in a far less oblique manner than the language of this trust. It seems at

least as likely that "other personal property" meant other tangible property, and the cash bequest to Rucks, establishes an assumption that intangible property would be available to fund the payment for Rucks of $10,000.

We conclude that the meaning of "personal property" in the trust is ambiguous and reasonable persons could come to different conclusions as to its meaning in this instrument. We agree that the term has the technical legal meaning Baker urges but find that the document as a whole creates substantial doubt that Boelson intended this technical meaning. Accordingly, we find the trust ambiguous and must address whether USIF's proffered exhibits and affidavits may be admitted to resolve the ambiguity. USIF argues that its exhibits and affidavits that bear directly on Boelson's intentions are admissible and resolve any ambiguity in its favor. Baker responds that we may not consider USIF's proffered extrinsic evidence because any ambiguity in the Boelson trust is "patent," not "latent," and under existing Indiana law, extrinsic evidence of the settlor's intent is not admissible to resolve a patent ambiguity. Earlier decisions of this Court drew the distinction Baker urges between patent and latent ambiguities.[1] See Daugherty, 119 Ind. at 258-60, 20 N.E.2d at 781; Skinner v. Harrison Twp., 116 Ind. 139, 141-42, 18 N.E.2d 529, 531 (1888). A patent ambiguity is an uncertainty created by the text of the donative instrument. A patent ambiguity can arise in a variety of settings, for example, where two portions of a document conflict with one another; or where it is unclear to which portion of a document a provision applies; or where a word has more than one dictionary meaning. McConnell v. Robbins, 193 Ind. 359, 365, 140 N.E. 59, 61 (1923); Restatement Third of Property: Wills & Other Donative Transfers § 11.1 cmt. b. A latent ambiguity is not apparent from reading the text of the donative document but is established by extrinsic evidence other than direct evidence of the settlor's intention. Restatement Third of Property: Wills & Other Donative Transfers § 11.1 cmt. c. As an example, a will devising property "to my cousin John" has a latent ambiguity if extrinsic evidence reveals that the testator had no cousin named John but did have a nephew named John and a cousin named James. Id. In Indiana, extrinsic evidence—both circumstantial and direct evidence of intention—has been held admissible to establish the existence of a latent

---

[1] More recent decisions of the Court of Appeals have followed this precedent. See, e.g., Nobbe v. Nobbe, 831 N.E.2d 835, 840 (Ind. Ct. App. 2005), reh'g denied, 2005 Ind. App. LEXIS 1901 (Ind. Ct. App. Oct. 6, 2005); Berry v. Ford, 829 N.E.2d 1052, 1054 (Ind. Ct. App. 2005); East v. Estate of East, 785 N.E.2d 597, 601 (Ind. Ct. App. 2003).

7

ambiguity and also to resolve it.  See, e.g., Grimes' Ex'rs v. Harmon, 35 Ind. 198, 208 (1871); Judy v. Williams, 2 Ind. 449, 450 (1851).  Indiana courts have traditionally refused to admit extrinsic evidence to aid in the resolution of a patent ambiguity on the ground that the language used conveys either no definite meaning or a confused meaning and the courts should not engage in conjecture and rewrite a donative instrument where the settlor has failed to adequately express his or her intent.  Grimes' Ex'rs, 35 Ind. at 208-09.

We agree with Baker that the ambiguity in the Boelson trust arises from the text of the document and therefore is patent under these authorities.  See Restatement Third of Property: Wills & Other Donative Transfers § 11.1 cmt. b.  We agree with USIF, however, that the distinction between patent and latent ambiguities is not useful, and it is proper to admit extrinsic evidence to resolve any ambiguity.  USIF notes that the current version of the Restatement of Property allows for admission of all extrinsic evidence—both direct and circumstantial—relevant to determining a settlor's intent.  See Id. at § 10.2.  Consistent with this view, several jurisdictions have abandoned the latent/patent distinction.  See, e.g., In re Torregano, 352 P.2d 505, 512 (Cal. 1960); Weir v. Leafgreen, 186 N.E.2d 293, 296 (Ill. 1962); In re Estate of Martin, 549 N.Y.S.2d 592, 594 (N.Y. Sur. Ct. 1989); In re Estate of Cohorn, 622 S.W.2d 486, 487-88 (Tex. App. 1981).  Under this approach, whether an ambiguity is deemed patent or latent has no significance.  Restatement Third of Property:  Wills & Other Donative Transfers §§ 10.2, 11.1.  We agree with USIF and these authorities that the latent/patent distinction has not been consistently applied and no longer serves any useful purpose.  Accordingly, we conclude that where an instrument is ambiguous, all relevant extrinsic evidence may properly be considered in resolving the ambiguity.[2]

The extrinsic evidence offered by USIF establishes unequivocally that Boelson's intention was to give the majority of her property to USIF.  Indeed, the trial court so found, but regarded itself bound by earlier precedent to disregard the evidence.  Boelson's own notes indicate "Brother is beneficiary of and to receive two IRA accounts, automobile and any furnishings and personal property in the condo that he would like."  Boelson's attorney's affidavit and her notes

---

[2] The Restatement Third rejects the four corners rule altogether and proposes admitting extrinsic evidence to determine intent even absent an ambiguity.  Because we find ambiguity in the contested term in Boelson's trust, we see no need to take that step.

of her meeting with Boelson reflect the attorney's understanding that Boelson wanted the gift to Baker to be the IRAs and the tangible personal property in Boelson's condominium and nothing more. Further proof of Boelson's intent is found in the affidavits of the trust officer and Boelson's companion. Both state that Boelson expressed to them her intention to give the bulk of her estate to USIF. There is no conflicting extrinsic evidence of Boelson's intent. There is therefore no genuine issue of material fact. We conclude that Boelson intended to limit her brother's share of her estate to IRAs, automobiles, and furnishings and other personal effects contained in her condominium. Baker offers nothing to contradict any of these affidavits, so the issue is resolvable on summary judgment. Oelling v. Rao, 593 N.E.2d 189, 190 (Ind. 1992).

## Conclusion

The probate court's order directing the trustee to distribute all of Boelson's personal property to Baker and the real property to USIF is reversed. This case is remanded with instructions to order the trustee to pay the trust's administrative expenses, to distribute $10,000 to Rucks, to distribute Boelson's IRAs and any asset that passes under Boelson's will and all automobiles, furnishings and the other personal property contained in Boelson's condominium to Baker, and to distribute the trust's remaining real and personal property to USIF.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.