Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Jul 03 2013, 7:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**WILLIAM R. FATOUT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ANNE HENSLEY POINDEXTER**
**RODNEY T. SARKOVICS**
Campbell, Kyle, Proffitt, LLP
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GREG HANEY, as Trustee of the )
Revocable Trust Agreement of )
Jay Budman Farrar Executed October 5, 1999, )
)
     Appellant, )
)
    vs. )    No. 29A02-1212-EU-1004
)
PATRICIA J. FARRAR, )
as Personal Representative of )
the Estate of Jay B. Farrar, )
)
     Appellee. )

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Judge
Cause No. 29D01-1111-EU-422

**July 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Greg Haney ("Haney"), as Trustee of the Revocable Trust of Jay Budman Farrar, filed a petition in Hamilton Superior Court to require Patricia J. Farrar ("Patricia"), as the Personal Representative of the Estate of Jay B. Farrar ("the Estate"), to pay certain estate expenses out of the Estate as opposed to funds within the trust over which Haney was the trustee. The trial court denied Haney's petition, and Haney appeals, claiming that the decedent's intent was that his estate expenses be paid out of the Estate, not the trust.

We affirm.

**Facts and Procedural History**

The facts of this case are undisputed. The decedent, Jay B. Farrar ("Farrar"), was a resident of Hamilton County, Indiana, who died on October 15, 2011. Several years before his death, on October 5, 1999, Farrar had executed a trust document establishing the Revocable Trust of Jay Budman Farrar ("the 1999 Trust"). Section 4.1 of the 1999 Trust provides:

> Payments. **After the Settlor's death, the Trustee shall, upon demand made by the Personal Representative of the Settlor's estate and to the extent so demanded, pay to the Personal Representative out of the Trust Property or any accumulated net income, those amounts necessary to pay the Settlor's funeral and burial expenses, any expenses of the Settlor's last illness, any legally enforceable claims against the Settlor or his estate, any reasonable expenses of administration of his estate, and all inheritance, estate and succession taxes payable by the reason of the Settlor's death together with any interest and penalties thereon, without reimbursement from the Settlor's Personal Representative, from any beneficiary of insurance upon the Settlor's life, or from any other person.** All such payments, except payment of interest, shall be charged against the Trust Property, and any interest so paid shall be charged against the Trust Income. The Trustee may make such payments or may pay over the amounts thereof to the Personal Representative of the Settlor's estate. Written statements by the Personal Representative of the sums to be paid shall be sufficient evidence

2

of their amount and propriety for the protection of the Trustee, and the Trustee shall be under no duty to see to the application of any such payments. This provision shall not limit the power of the Trustee to purchase assets from the Settlor's estate.

Appellant's App. p. 27 (emphasis added). Section 2 of the 1999 Trust provided that:

The Settlor shall have the right, by a signed written instrument delivered to the Trustee during the Settlor's life, to revoke this agreement in whole or in part and amend it from time to time in any respect. No amendment changing the powers, duties or compensation of the Trustee shall be effective unless approved in writing by the Trustee.

Id. at 26. And Section 5.2 of the 1999 Trust provided that, upon Farrar's death, "the Trustee shall divide the Trust Property into separate equal shares for the benefit of each for the Settlor's two (2) children, namely, William Budman Farrar and David Richard Farrar, and any child hereafter born to or adopted by the Settlor[.]" Id. at 29.

On September 15, 2011, Farrar executed another trust instrument establishing another revocable trust ("The 2011 Trust") that was to be funded by the assets from his Estate. Section 4.1 of the 2011 Trust provided:

Upon my death, the Successor Trustee **may**, upon said Trustee's own initiative or upon the request of my Personal Representative, and in the Trustee's sole discretion, pay out of the trust property all or any part of (1) the expenses or indebtedness incurred on account of my last illness, funeral or burial expenses, (2) the transfer, estate and/or inheritance taxes which may become payable by reason of my death with respect to any property included in my estate for estate or inheritance tax purposes, and (3) any other debts or obligations of mine. The Successor Trustee **may** make any such payments to the Personal Representative of my estate or directly to any of my creditors to whom such indebtedness or obligation is due, and, in **the Successor Trustee's sole discretion, may** retain in the trust, pending final determination of the amount of such indebtedness or obligation of my estate, sufficient funds to cover the payments hereby authorized. The Successor Trustee shall take into consideration the assets available in my estate for the payment of any of my liabilities, but the Successor Trustee

3

need not require that assets be exhausted before the Successor Trustee determines to pay such expenses, taxes or debts.

Id. at 42 (emphasis added). Section 4.2 of the 2011 Trust then provided that, after making any payments pursuant to Section 4.1, the Trustee was then to "pay to or for the benefit of my wife, Patricia J. Farrar, such amounts of the net income and principal of the Trust Estate as the Successor Trustee may choose or the Successor Trustee may accumulate the net income and add it to the principal of the Trust Estate." Id. In the event of Patricia's death, the 2011 Trust provided specific bequests to his sons, then the remainder to Patricia's children.

On the same day he executed the 2011 Trust instrument, Farrar also executed a Last Will and Testament ("the 2011 Will"). The 2011 Will states in relevant part:

**ITEM I**

I direct that my just debts, funeral expenses and expenses of my last illness be paid as soon after my death as may be practicable.

**ITEM II**

I direct my Personal Representative to pay out of my estate, without right of reimbursement and as part of the expenses of administering my estate, all estate, inheritance, transfer and succession taxes, including any interest or penalties thereon, which may be lawfully assessed by reason of my death, on any property or interest therein included in my gross estate for tax purposes, whether or not such property passes under this Will. I hereby waive, on behalf of my estate, any right to recover any part of such taxes or penalties from any person, including any beneficiary of the trust which may be created by reason of this Will, and including anyone who may have received from me or my estate, any property which is taxable as a part of my estate.

Id. at 17-18.

After Farrar's death on October 15, 2011, his 2011 Will was admitted to probate and his wife, Patricia, was appointed Personal Representative of the Estate. During the

4

course of administering the Estate, Patricia became aware of the 1999 Trust. Although the Estate was solvent, its assets were illiquid.[1] On October 25, 2011, Patricia obtained $10,000 of funds from the 1999 Trust, despite the fact that she was not the trustee of the 1999 Trust. This caused a conflict between Patricia, as Personal Representative of the Estate, and Haney, as Trustee of the 1999 Trust. Then, on April 19, 2012, Patricia made a demand upon Haney, under Section 4.1 of the 1999 Trust, for $16,289.35, which she claimed was necessary to pay for Farrar's funeral expenses, expenses relating to his last illness, and the costs of administering the Estate.

On June 13, 2012, Haney, acting as Trustee of the 1999 Trust, intervened and filed a petition to require expenses, taxes, and debts of the Estate to be paid out of the assets of the Estate and to require the $10,000 already withdrawn by Patricia to be returned to the 1999 Trust. Patricia filed her response on June 29, 2012, and the trial court held a hearing on the matter on October 9, 2012. The trial court issued a written order on November 19, 2012, denying Haney's petition and ordering him to pay any and all Estate expenses. Haney filed his notice of appeal on December 17, 2012, and this appeal ensued.

**Standard of Review**

The interpretation of a trust is a question of law for the court. Univ. of S. Ind. Found. v. Baker, 843 N.E.2d 528, 531 (Ind. 2006). Questions of law are reviewed by this court de novo. See Bellows v. Bd. of Comm'rs of Cnty. of Elkhart, 926 N.E.2d 96, 114 (Ind. Ct. App. 2010). Our primary purpose in construing a trust instrument is to ascertain

---

[1] The assets of the Estate consisted of real estate valued at $83,100 and an vehicle valued at $19,698.75, but until these assets could be sold, Patricia was without cash to pay Estate expenses.

5

and give effect to the settlor's intention and carry out this intention unless it is in violation of some positive rule of law or against public policy. Baker, 843 N.E.2d at 531. We are not at liberty to rewrite a trust agreement any more than we are at liberty to rewrite a contract. Id. When we construe a trust instrument, we attempt to discern the settlor's intent in light of the facts and circumstances existing at the time the instrument was executed. Id. Indiana follows the "four-corners rule" that extrinsic evidence is not admissible to add to, vary, or explain the terms of a written instrument if the terms of the instrument are susceptible to a clear and unambiguous construction. Id. Accordingly, where a trust is capable of clear and unambiguous construction, we must give effect to the trust's clear meaning without resort to extrinsic evidence. Id.

**Discussion and Decision**

The question before us is how to interpret the language of Section 4.1 of the 1999 Trust in light of the language in the subsequent 2011 Trust and 2011 Will. Again, Section 4.1 of the 1999 Trust provides that:

> After the Settlor's death, the Trustee **shall**, upon demand made by the Personal Representative of the Settlor's estate and to the extent so demanded, pay to the Personal Representative out of the Trust Property or any accumulated net income, those amounts necessary to pay the Settlor's funeral and burial expenses, any expenses of the Settlor's last illness, any legally enforceable claims against the Settlor or his estate, any reasonable expenses of administration of his estate, and all inheritance, estate and succession taxes payable by the reason of the Settlor's death together with any interest and penalties thereon, **without reimbursement** from the Settlor's Personal Representative, from any beneficiary of insurance upon the Settlor's life, or from any other person.

Appellant's App. p. 27 (emphasis added).

6

Haney admits that, pursuant to this language, "[t]he Settlor thus intended that no 1999 Trust assets be used for estate obligations absent a Personal Representative demand, and then only to the extent of any such demand." Appellant's Br. p. 8. We agree. Section 4.1 of the 1999 Trust clearly and unambiguously requires, using the mandatory word "shall," that the Trustee pay for certain expenses upon demand by the Personal Representative of Farrar's Estate, without reimbursement. Here, the Personal Representative of Farrar's Estate, Patricia, made such a demand. Under the clear terms of the 1999 Trust, Haney was and is required to accommodate this demand. Under the four-corner's rule, this should be the beginning and end of our discussion.

Nevertheless, despite this clear and unambiguous language, Haney insists that we should also look to the subsequent 2011 Trust and Will to discern Farrar's intent. Doing so, Haney argues, indicates that it was Farrar's intent that obligations of the Estate be paid out of the assets of the Estate, not the assets of the 1999 Trust. This, however, is a request to look to extrinsic evidence, which is impermissible when the language of the trust is clear and unambiguous. See Baker, 843 N.E.2d at 531.

But even if we were to look to the 2011 Trust and the 2011 Will, there is nothing in these instruments which alters the clear and unambiguous language of the 1999 Trust. Haney claims that the 2011 Will contains language directing the personal representative of the Estate to pay debts, funeral expenses, and expenses of his last illness promptly, which he claims indicates Farrar's intent that such expenses be paid out of the assets of the Estate. It is true that the 2011 Will directs that Farrar's "just debts, funeral expenses and expenses of my last illness be paid as soon after my death as may be practicable."

7

Appellant's App. p. 17. It is also true that the 2011 Will directs the Personal Representative of the Estate to pay *taxes* out of the Estate assets. Id. But we fail to see how a provision directing that taxes be paid out of the Estate assets also requires that administrative costs, certain medical expenses, and funeral expenses be paid out of the Estate assets. If that had been Farrar's intent, he could have stated so explicitly in the 2011 Will and/or by amending the 1999 Trust, neither of which he did. And that the Personal Representative was directed to pay the debts "promptly" does not preclude the Personal Representative from requesting such funds be paid out of the 1999 Trust, especially in light of the fact that the Estate's assets were illiquid.

Haney also claims that Farrar's Will and Trusts should be read in light of Indiana Code section 29-1-14-9, which he claims is a "default rule" that requires payment of funeral and burial expenses out of Estate assets. This statute classifies various expenses and costs into seven classes, and provides that, "If the applicable assets of the estate are *insufficient* to pay all claims in full, the personal representative shall make payment in the following order [listing the various classifications of expenses]." I.C. § 29-1-14-9(a) (emphasis added). Here, the Estate is solvent. Thus, there are sufficient funds in the Estate to pay for the claims against the Estate, and the and the prioritization provisions of section 29-1-14-9 are inapplicable.

Haney also claims that the language of the 2011 Trust "reinforces" his position that his medical and funeral expenses be paid out of the Estate assets. Specifically, he notes that the 2011 Trust provided the Trustee the *option* to pay such expenses from the 2011 Trust assets. This, Haney claims, indicates that Farrar intended that such expenses

8

be paid from the Estate assets if not out of the 2011 Trust assets. This is a *non sequitur*. The fact that the 2011 Trust gives the trustee of that trust the option to pay these expenses does not alter the fact that the 1999 Trust clearly and unambiguously provides that the trustee of that trust *shall* pay such expenses if requested, and to the extent requested, by the Personal Representative of the Estate.

Next, Haney claims that the second sentence of Item II of the 2011 Will demonstrates "beyond any doubt" that it Farrar's intent regarding payment of estate obligations changed after he executed the 1999 Trust. We disagree. The language in question states, "I hereby waive, on behalf of my estate, any right to recover any part of such taxes or penalties from any person, including any beneficiary of the trust which may be created by reason of this Will, and including anyone who may have received from me or my estate, any property which is taxable as a part of my estate." Appellant's App. pp. 17-18. This is in direct contrast, Haney claims, to the language in the 1999 Trust requiring the trustee thereof to pay, on demand by the Personal Representative of the Estate, all inheritance, succession, and estate taxes. However, the fact that Farrar's intention may or may not have changed with regard to how *taxes* were to be paid does not alter the clear and unambiguous language of the 1999 Trust requiring the trustee of that trust to pay medical and funeral expenses if requested by the Personal Representative of the Estate.

In a similar argument, Farrar claims that the 2011 Will requires payment of administration costs out of the assets of the Estate. The language at issue provides, "I direct my Personal Representative to pay out of my estate, without rights of

9

reimbursement and *as part of the expense of administering my estate*, all estate, inheritance, transfer and succession taxes, including any interest or penalties thereon, which may be lawfully assessed by reason of my death[.]" Id. at 17 (emphasis added). Although this provision refers to the payment of these taxes as a "part of the expense of administering" the Estate, it clearly refers only to the payment of taxes that are lawfully assessed by reason of Farrar's death. It does not refer to other administrative costs. Again, the fact that the 2011 Will requires that taxes be paid out of the Estate assets has no bearing on the language of the 1999 Trust that clearly and unambiguously requires the trustee to pay administrative, medical and funeral expenses if requested by the Personal Representative of the Estate.

Haney's next argument is that the illiquidity of the Estate assets is no reason to disregard language in the 2011 Will requiring that the obligations of the Estate be paid out of Estate assets. This argument assumes, however, that we accept Haney's interpretation of the 2011 Will and 2011 Trust to prevent the Personal Representative from demanding funds from the 1999 Trust to pay for medical, funeral, and administrative costs. We have already rejected the premise of this argument above and need not address it further.

Lastly, Haney claims that Patricia, as the Personal Representative of the Estate, breached her statutory duty to follow the provisions of the 2011 Will and to take possession of Estate assets and sell such assets when necessary to pay Estate expenses. The Estate argues that Haney has waived this argument by not presenting this issue to the trial court.

10

It is well established that a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. Commitment of T.S. v. Logansport State Hosp., 959 N.E.2d 855, 857 (Ind. Ct. App. 2011), trans. denied. This rule protects the integrity of the trial court in that the trial court cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Id. Conversely, as an intermediate court of appeals, this court is not the forum for the initial decisions in a case. Id. Therefore, an argument or issue not presented to the trial court is generally waived for appellate review. Id.

Haney does not deny that he did not present this argument to the trial court. Instead, he claims that when this court reviews an issue *de novo*, "the arguments made or not made at the trial court are not binding upon the Court of Appeals." Appellant's Reply Br. p. 5. However, the case he cites for this proposition, Merrill v. Wimmer, 453 N.E.2d 356, 359 (Ind. Ct. App. 1983), simply noted that, when reviewing the construction of a will, the document speaks for itself and we are therefore not bound by the trial court's consideration upon *de novo* review. More importantly, however, our supreme court granted transfer in Merrill, vacating the opinion of this court. See Merrill v. Wimmer, 481 N.E.2d 1294, 1296 (Ind. 1985) ("transfer is granted, and the aforementioned decision and opinion of the Court of Appeals are ordered vacated.").

Waiver notwithstanding, Haney would not prevail. The first statute he cites provides simply that the personal representative of an estate has the authority and duty to take possession of estate property. See Ind. Code § 29-1-13-1 ("Every personal representative shall have a right to take, and shall take, possession of all the real and

11

personal property of the decedent."). Haney refers us to nothing that would support a conclusion that Patricia has failed in this duty.

The other statute cited by Haney provides:

> When a person dies, his real and personal property, passes to persons to whom it is devised by his last will, or, in the absence of such disposition, to the persons who succeed to his estate as his heirs; but it shall be subject to the possession of the personal representative and to the election of the surviving spouse and *shall be chargeable with the expenses of administering the estate, the payment of other claims* and the allowance is under IC 29-1-4-1 [the spousal share], except as otherwise provided in IC 29-1.

Ind. Code § 29-1-7-23 (emphasis added). Haney argues that, under this statute, the assets of the Estate are available for the payment of estate obligations. Be that as it may, it does not suggest that estate assets are the *only* means of paying obligations of the Estate. In short, we see nothing in these statutes to suggest that Patricia breached her duty as Personal Representative of the Estate by requesting funds from the 1999 Trust.[2]

## Conclusion

The trial court did not err by denying Haney's petition to require Patricia, as the Personal Representative of the Estate, to pay for administrative costs, certain medical expenses, and funeral expenses out of Estate assets, rather than from the 1999 Trust over which Haney is the trustee. The clear and unambiguous language of the 1999 Trust requires Haney to pay for such expenses when requested by the Personal Representative of the Estate, and nothing in the subsequent 2011 Trust or 2011 Will alters the relevant provisions of the 1999 Trust.

---

[2] Indeed, it could be argued that Patricia, as the Personal Representative of the Estate, had a fiduciary duty to request funds from the 1999 Trust in order to maximize the assets of the Estate.

12

Affirmed.

BAKER, J., and MAY, J., concur.