FILED

Mar 24 2023, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Jeffrey S. Dible
Margaret L. Smith
Frost Brown Todd LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Clifford M. Robinson
The Law Office of Clifford M.
Robinson, LLC
Rensselaer, Indiana

William T. Sammons
The Law Office of William T.
Sammons, P.C.
Rensselaer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indianapolis Museum of Art, D/B/A Newfields, <br> *Appellant,* <br><br> v. <br><br> Kathleen Hurley, et al, <br> *Appellee.* | March 24, 2023 <br> Corrected <br><br> Court of Appeals Case No. 22A-TR-767 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Steven R. Eichholtz, Judge <br><br> Trial Court Cause No. 49D08-2011-TR-39783 |

**Opinion by Judge Pyle**

Judges Robb and Weissmann concur.

**Pyle, Judge.**

# Statement of the Case

[1] Put simply, a trust is a fiduciary relationship whereby one person, the trustee, holds property for the benefit of another, the beneficiary.[1] Relevant to this case is what has become known as the bypass or credit shelter trust. This type of trust allows a married couple to maximize their estate tax exemption. It can also provide protection from claims by creditors and bankruptcy. The strategy involves establishing two trusts after one spouse dies. The deceased spouse's portion of the couple's property, normally up to their applicable exclusion amount, is placed into a bypass trust; the deceased spouse can identify the beneficiaries (usually children and grandchildren). A marital trust is then combined with the bypass trust, which can provide lifetime benefits to the surviving spouse, who controls its administration. In addition, the bypass trust does not get counted as part of the surviving spouse's taxable estate. The use of these types of trusts requires the use of specific clauses signaling how assets are to be valued and strict compliance with Internal Revenue Service rules.[2]

[2] In 1969, Alicia Ballard ("Alicia") established a Revocable Trust by Alicia Ballard ("the Trust"), which was twice amended in 1981. The beneficiaries of the Trust were Alicia's three children, Edward Ballard ("Edward"), Chad

---

[1] IND. CODE § 30-4-1-1.

[2] Rev. Proc. 64-19.

Ballard ("Chad"), and Sylvia Hurley ("Sylvia"), her brother, Stanley Chimiak ("Stanley"), their descendants, and the Indianapolis Museum of Art d/b/a Newfields ("Newfields"). All of Alicia's children and her brother are now deceased, but Sylvia is survived by five children and two grandchildren ("the Children").[3]

[3] Relevant to this appeal are: (1) a spendthrift provision providing periodic income to Edward, whereby, upon his death, any undistributed income was to pass to his descendants; and (2) a provision that upon the death of Alicia's children, brother, and their descendants, any remaining trust assets shall be distributed outright to Newfields. Edward died childless on July 13, 2020. As a result, the current trustee, JPMorgan Chase Bank, N.A. ("JPMorgan"), believed that the Trust was ambiguous as to how the trust funds benefitting Edward were to be distributed. In other words, should the funds being held in trust be distributed to Sylvia's children or Newfields? JPMorgan petitioned the trial court for instructions and served the interested parties with notice of its petition. The Children and Newfields eventually filed cross motions for summary judgment, and the trial court held a hearing. After considering the designated evidence, the trial court found that Alicia had intended that the trust funds were to benefit all of her descendants before any funds were to be

---

[3] Kathleen Hurley ("Kathleen") is the surviving daughter of Sylvia. Dawn Cappelletti ("Dawn") is the surviving granddaughter of Sylvia. Kathleen and Dawn are the only two descendants of Sylvia who filed appearances as interested parties in response to JPMorgan's petition. However, because their interests are inextricably linked with all of Sylvia's descendants now living, we refer to them collectively as "the Children."

distributed to Newfields. As a result, the trial court's judgment created a resulting trust and ordered that the remaining funds that had been set aside for Edward's benefit be distributed to the Children. Newfields appeals the trial court's denial of its motion for partial summary judgment. Concluding that the trial court properly granted summary judgment in favor of the Children and against Newfield, we affirm the trial court's judgment.

We affirm.

## Issue

Whether the trial court erred in granting summary judgment in favor of the Children and against Newfields.

## Facts

In 1938, Alicia married Charles Ballard ("Charles"). They had two sons, Edward and Chad. Alicia also had a daughter, Sylvia, who was not Charles' daughter.

On November 18, 1969, Alicia created the Trust. Article Three was entitled "Disposition of Income and Principal of Trust Estate After Death of Settlor." (App. Vol. 2, p. 76). The Trust directed the trustee to provide income to family members under various scenarios. For example, Section 3.3 provided that if Charles survived Alicia, the trustee would establish a separate fund entitled "Husband's Trust" in an amount allowing Alicia's estate to qualify for the maximum estate tax marital deduction; the value of assets were to be

determined using the fractional share formula.[4] (App. Vol. 3, p. 18). From this fund, Charles would receive payments "for his comfort, maintenance and support[.]" (App. Vol. 3, p. 16). If the value of the Trust's assets exceeded the amount of the maximum estate tax marital deduction, the excess amount would be placed into a separate trust entitled the "Family Fund." Upon Charles' death, the contents of Husband's Trust would be distributed in accordance with his wishes as outlined in his Last Will and Testament. If Charles left no instructions concerning the distribution of funds, they would be "added and consolidated with the property designated as the 'Family Fund' created under Article Three[.]" (App. Vol. 3, p. 17).

---

[4] Enacted by Congress, the Revenue Act of 1948 created the federal estate tax marital deduction. *See Jackson v. State*, 376 U.S. 503, 508 (1964) ("Qualification for the marital deduction must be determined as of the time of death."). At that time, it allowed the decedent to pass 50% of the adjusted gross estate to the surviving spouse without paying estate tax. Mark B. Edwards, *Marital Deduction Formulae – A Planners Guide*, 1967 Duke L.J. 254, 255 (1967). Despite the deduction, significant tax consequences can be encountered by a surviving spouse who receives the entire property in the estate as a bequest. "To take full advantage of any available marital deduction and, at the same time, pass to the surviving spouse only the minimum amount of property necessary to obtain the deduction which would be included in her gross estate, 'formula clauses' were devised." Charles A. Cohen, *The Estate Tax Marital Deduction – Revenue Procedure 64-19*, 41 Indiana L.J. 711, 712 (1966). There are two basic types of formula clauses: fractional and pecuniary. The fractional formula "measures the amount of the property transferred to the surviving spouse in terms of a fractional share of the estate." *Id*. at 713. Because the fraction remains constant relative to the value of the entire estate, the value of any property transferred to the surviving spouse remains uniform with "any fluctuations of the estate assets during the period of administration." *Id*. However, the pecuniary formula "provides for a dollar amount bequest which is carved out of the estate before disposition of the" remaining estate after debts, taxes, costs of administration, and legacies have been paid. *Id*. "Thus, since the dollar amount of the bequest to the surviving spouse is fixed, her proportion of the total assets of the estate would vary with the fluctuation in value of the estate assets during the administration of the estate." *Id*. Regardless of which formula clause is chosen, if the will directs the executor to convert the estates assets to cash before payment to a surviving spouse or trustee, the conversion will likely result in a gain or loss by the estate for income tax purposes. *Id*. Treatment of the loss or gains will determine whether the chosen approach is a benefit for the surviving spouse.

[7]     Distributions from the Family Fund were governed by Section 3.5. The income of this fund was to be distributed to Edward (40%), Chad (40%), and Sylvia (20%). If they were not alive at the time of distribution, the amount would go to their "children or more remote issue[.]" (App. Vol. 3, p. 19). Additionally, Section 3.6 reduced the amounts Edward and Chad were to receive if they did not take certain steps to invest proceeds received from a different trust. If any income was left after distributions were made under Section 3.6, it was to be distributed equally between Sylvia, Stanley, and to "their descendants if they were not alive. Any net income which [was] not distributable under [Section 3.6] . . . shall be paid to the Northwood Institute, Midland, Michigan." (App. Vol. 3, p. 21).

[8]     On June 22, 1981, Alicia amended the Trust. In establishing Husband's Fund, Alicia declared her intention to switch from a fractional to a pecuniary valuation formula. In addition, Article 3 was amended. Relevant to this appeal, Section 3.5 was amended to provide a one-time payment of $25,000 to Sylvia and Stanley, but not to any of their descendants. In addition, Section 3.5(a) thru (c) of the amendment also provided income for Edward and Chad and their descendants. However, neither son ever had children. Further, Newfields, then known as the Indianapolis Museum of Art, was designated as the beneficiary under Section 3.5(d). It provides as follows:

> If the Settlor is not survived by any issue, or if the Settlor is survived by issue but none of the Settlor's issue survives to the date of final distribution of trust assets to said issue, the Trustee shall hold all of the assets of the trust estate in a single trust and shall invest said assets as provided herein. The Trustee shall pay the net

income of said trust at least annually to the Settlor's daughter, Sylvia Hurley, and the Settlor's brother, Stanley Chimiak, in equal shares. If one of them is deceased or dies then all of the net income shall thereafter be paid at least annually to the surviving one of the two of them.

When the daughter, Sylvia Hurley, and the Settlor's brother, Stanley [C]himiak, are deceased, and if *all of the Settlor's is[s]ue have died prior to the date when there would have been final distribution of trust assets to them*, the remaining assets of the trust estate shall be distributed outright and not in trust to the Indianapolis Museum of Art, Indianapolis, Indiana.

(App. Vol. 2, p. 67) (emphasis added). Section 3.8 defined the term "issue" as follows:

As used throughout this indenture, the term "issue" shall include adopted persons to the same extent as though they were natural born children of their adopting parents and shall also include descendants in any degree of remoteness from the ancestor designated. A child in gestation which is later born alive shall be considered a child in being throughout the period of gestation.

(App. Vol. 2, p. 69).

[9] Then, on August 18, 1981, Alicia amended the Trust again. In the second amendment, the trustee was directed to offer to convey certain real estate owned by Alicia to Charles. No other provision in Article 3 was affected by the second amendment.

[10] Alicia died on April 20, 1982. Her husband, Charles, died in 1987. Alicia's daughter, Sylvia, died on April 10. 1999. Alicia's sons, Chad, died in 2001, and Edward died on July 13, 2020. As mentioned above, neither son had any

children. Alicia's brother, Stanley, also died before Edward's death. Four of Sylvia's children and two of her grandchildren remain alive.

[11] On November 10, 2020, JPMorgan, pursuant to INDIANA CODE § 30-4-3-18(a), filed a petition seeking instruction as to how the Trust's assets as applied to Edward were to be distributed. In its petition, JPMorgan stated that Section 3.5(c) did not address how the Trust assets set aside for Edward were to be distributed in the event neither son had children. In addition, JPMorgan believed that because Section 3.5(d) was "self-contradictory on its face, as Alicia's daughter Sylvia is among the class of Alicia's issue – yet Section 3.5(d) purports to apply only where all of Alicia's issue have died." (App. Vol. 2, p. 44). JPMorgan asserted that it "has been unable to determine from the Trust instrument [Alicia's] intent regarding the proper distribution of the balance of trust property remaining in Edward's Trust, and respectfully requests the Court's instruction regarding the proper distribution of such property." (App. Vol. 2, p. 45). JPMorgan served notice of its petition on all interested parties.

[12] On February 2, 2021, Newfields filed a brief outlining its position. Specifically, Newfields argued that Alicia clearly intended that the Trust assets were not to benefit Sylvia's children or grandchildren. The June 1981 Amendment clearly made changes that eliminated the beneficiary interests of Sylvia's children. In subsequent filings, the Children filed pleadings seeking to invalidate the June 1981 Amendment or, in the alternative, have the trial court determine whether Alicia had the mental capacity to make the amendments. Newfields objected to the Children's pleadings, and the parties engaged in discovery.

On September 8, 2021, Newfields filed its motion for partial summary judgment. Newfields argued that the designated evidence showed that Alicia had the unilateral authority to amend the Trust and that an ambiguity existed as to the Trust provisions under Section 3.

[13] On January 10, 2022, the Children filed their motion for summary judgment and designated evidence. As a part of their designated evidence, the Children submitted an affidavit of Brian Hewitt ("Hewitt") as an expert in estate planning and trust administration. Hewitt stated that the common practice in Indiana when an individual wants to disinherit a class of beneficiaries is to include specific language clearly expressing that desire. Further, in Hewitt's experience, most trust settlors only name a charity as a beneficiary when the trust must be dissolved because there are no further beneficiaries. In Hewitt's opinion, the plain language of the Trust, the lack of any language expressing Alicia's desire to disinherit Sylvia and her descendants, and several references to the Rule Against Perpetuities indicated that Alicia intended for the Children to benefit from the Trust. As a result, the Children asked for the trial court to enter judgment in their favor because they believed there was no ambiguity between the various provisions in the Trust. Because they are the known heirs of Alicia, they argued that they are entitled to the Trust assets previously left to Edward.

[14] On February 10, 2022, the trial court held a hearing on the parties' cross motions for summary judgment. On March 15, 2022, the trial court issued its order finding "that the Son's trusts created in Sections 3.5(a) and (c) are fully

executed, but a residue exists without a named beneficiary to receive the residuary assets. According to well established precedent, such assets shall pass by law to the successors in interest of Alicia Ballard." (App. Vol. 2, p. 39). As a result, the Children's motion for summary judgment was granted; Newfields' motion was denied.

[15] Newfields now appeals.

# Decision

[16] Newfields argues that the trial court incorrectly granted summary judgment in favor of the Children and denied its motion for partial summary judgment. Specifically, Newfields argues that Section 3.5(d) is ambiguous. As a result, they contend that summary judgment should have been granted in its favor, and the case should be "remanded so that available extrinsic evidence may be used to resolve the ambiguities and determine . . . [Alicia's] intent." (Newfields' Br. at 24). In the alternative, Newfields argues that even if Section 3.5(d) were found to be unambiguous, summary judgment should also be granted in its favor because: (1) there is no legal requirement that Alicia specifically declare her intention to disinherit Sylvia and her descendants; and (2) a comparison of the original trust with the first amendment provides no basis for inferring that Alicia "intended for a share of the Trust's principal or income pass [sic] or to be distributed at any time to [her] grandchildren or great-grandchildren from her prior marriage." (Newfields' Br. at 25).

[17] The Children argue that the trial court properly determined that the Trust provision regarding Edward's residue created a situation where the Trust has been "fully performed without exhaustion of the trust property or a designated beneficiary." (The Children's Br. at 15). According to the Children, the trial court properly used its equitable powers to create a resulting trust. In addition, the Children argue that the trial court properly determined that the plain language of Section 3.5(d) provided that Newfields would receive the Trust funds only if all of Alicia's issue had died. As a result, they argued that the trial court properly determined that the Trust relating to Edward should be distributed to the Children.

[18] The interpretation of a trust is a question of law for the court. *University of Southern Indiana Foundation v. Baker*, 843 N.E.2d 528, 531 (Ind. 2006). In reviewing the grant or denial of summary judgment, our standard of review is de novo. *Id.* "Summary judgment should be granted only if the evidence authorized by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Id.*

[19] It is well settled that the "primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention." *Id.* at 532. In Indiana, we follow "'the four corners rule' that 'extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction.'" *Id.* (quoting *Hauck v. Second Nat'l Bank of Richmond*, 153 Ind. App. 245, 260, 286 N.E.2d 852, 861 (1972)). Under this rule, if "a trust is

capable of clear and unambiguous construction, under this doctrine, the court must give effect to the Trust's clear meaning without resort to extrinsic evidence." *Baker*, 843 N.E.2d at 532.

[20] We first examine Section 3.5(d) to determine if Newfields is entitled to any portion of the Trust relating to Edward when any of Alicia's issue are still alive. We find that the terms of Section 3.5(d) are clear and unambiguous. The relevant portion of that section reads:

> When [Alicia's] daughter, Sylvia Hurley, and . . . [Alicia's] brother, Stanley [C]himiak, are deceased, *and if all* of . . . [Alicia's] i[s]sue have died prior to the date when there would have been final distribution of trust assets to them, the remaining assets of the trust estate shall be distributed outright and not in trust to [Newfields].

(App. Vol. 2, p. 67) (emphasis added). A plain reading of this section shows that a condition precedent to Newfields receiving any trust funds is that Sylvia and Stanley must have died, as well as *all* of Alicia's other issue. Section 3.8 of the Trust states that "the term 'issue' shall include . . . descendants in any degree of remoteness from the ancestor designated." (App. Vol. 2, p. 69). Since Alicia is the designated ancestor and the Children remain alive, Newfields cannot take from the Trust.

[21] Next, we turn to whether the trial court properly used its equitable powers to create a resulting trust to administer the funds relating to Edward's portion of the Trust. Sections 3.5(a) thru (c) established the Trusts relating to Edward and Chad. If the sons died, the income from the Trust was to pass to their children. The income from the Trust was to be used to provide for their support,

maintenance, medical expense, and education. However, it is undisputed that Edward and Chad died without children. As a result, the Trust was fully performed, but funds remained without a designated beneficiary.

[22] In *Doll v. Post*, 132 N.E.3d 34, 40 (Ind. Ct. App. 2019), *trans. denied*, we addressed a situation where a trust failed to designate a beneficiary with reasonable certainty. In that case, we held that "[w]here, as here, the express terms of a trust are fully performed but there remains a residue and no valid residuary clause, a resulting trust is created by operation of law over the residue." In addition, we noted that our supreme court held that when "'no provision in the terms of the trust . . . as to who shall receive the trust property on the termination of the trust, the trustee will ordinarily hold the trust property upon a resulting trust for the settlor or his successors in interest.'" *Id.* (quoting *Colbo v. Buyer*, 235 Ind. 518, 530, 134 N.E.2d 45, 51 (1956)). Likewise, we also noted in *Pavy v. Peoples Bank & Trust Co.*, 135 Ind. App. 647, 656, 195 N.E.2d 862, 867 (1964) that:

> It is an elementary rule of law that[,] when a person attempts to create an express trust and fails to for any reason, a resulting trust arises in favor of [the settlor] and[,] if he be deceased, then in favor of his estate, and the trust property . . . reverts to the settlor or his estate, as the case may be.

Based upon the holdings in these cases, we find that the trial court did not err in establishing a resulting trust for the leftover portion of the Trust relating to Edward for the benefit of the Children. It is clear from the terms of the Trust that Alicia's intent was to: (1) distribute her estate paying the least amount of

estate taxes; and (2) provide a benefit to her descendants before Newfields would receive any benefit. As a result, we affirm the trial court's grant of summary judgment in favor of the Children and the denial of Newfields' motion for partial summary judgment.

[23] Affirmed.

Robb, J. and Weissmann, J., concur.