CWE CONCRETE CONSTRUCTION, INC., d/b/a Elbrecht Concrete, and Christopher Elbrecht, Appellants–Defendants,

v.

**FIRST NATIONAL BANK, Appellee–Plaintiff.**

No. 29A02–0311–CV–978.

Court of Appeals of Indiana.

Sept. 10, 2004.

Rehearing Denied Nov. 17, 2004.

Gene R. Leeuw and John M. Mead, Leeuw Oberlies & Campbell, P.C., Indianapolis, IN, Attorneys for Appellants.

Thomas W. Farlow, Julia Blackwell Gelinas and Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

CWE Concrete Construction, Inc. d/b/a Elbrecht Concrete and Christopher El-brecht (collectively, "Elbrecht") appeal the trial court's grant of summary judgment in favor of First National Bank ("FNB"), raising several issues, one of which we find dispositive: whether Elbrecht's revolving line of credit had a borrowing base. Because we find that the revolving line of credit did not have a borrowing base, we conclude that Elbrecht was not in default at the time that FNB froze its bank account, accelerated its other loans, and filed its complaint. Consequently, we find that the trial court erred by granting summary judgment in favor of FNB and reverse and remand for further proceedings.

### Facts and Procedural History

On December 30, 1999, Elbrecht executed a promissory note for a $1.5 million revolving credit line with Harrington Bank, FSB.[1] The "ADDITIONAL TERMS" section of the December 1999 Note advised that additional terms and requirements were contained in a Letter Agreement dated December 10, 1999.[2] The maturity date of the December 1999 Note was September 30, 2000. On October 1, 2000, Elbrecht executed a second promissory note, which renewed the December 1999 Note—although with an increased revolving credit line of $2 million. This renewal note was identified as "Loan No. 3980," Appellant's App. p. 130, and provided, in pertinent part, "BACK-GROUND. Borrower executed a promissory note payable to the order of Bank dated December 30, 1999[,] . . . evidencing a loan . . . which Note is further described as Note number 3980 in the principal amount of $1,500,000.00. Borrower has

---

1. FNB is the successor-in-interest by merger to Harrington Bank.

2. The December 1999 Letter Agreement is not contained in any of the materials before us nor was it designated to the trial court. This omission does not hinder our review, however, as subsequent commitment letters that amended this Letter Agreement have been included for our review. These subsequent commitment letters are referenced below.

requested that this Note be renewed." Appellant's App. p. 130. The October 2000 Note also referred to the December 1999 Letter Agreement for additional terms and requirements. On September 26, 2000, a loan commitment letter was sent to Elbrecht, which set forth a borrowing base for the $2,000,000 revolving line of credit as follows:

> Borrowing Base: Loan outstanding shall never exceed the lesser of the $2,000,000 or 75% of all eligible receivables. Eligible receivables are defined as non-bonded, non-retainage receivables less than 90 days from invoice date.

Appellant's App. p. 133. Through a series of promissory notes, the revolving credit line designated as Loan No. 3980 was eventually increased to $2.6 million. Accordingly, another commitment letter was sent to Elbrecht on May 1, 2001, which specified: "This will serve to amend the previous commitment letters as follows: . . . . 2. The line of credit shall be the lesser of $2,600,000 or the borrowing base." Appellant's App. p. 78. On September 30, 2001, Elbrecht executed another promissory note. The September 2001 Note, which had a maturity date of October 30, 2001, incorporated by reference the additional terms and requirements contained in the May 1, 2001, commitment letter. Elbrecht renewed the Note on October 30, 2001, and this Note, in pertinent part, provided:

1. DATE AND PARTIES: The date of this Promissory Note . . . is October 30, 2001. This Note evidences a loan *which includes all extensions, renewals, modifications and substitutions* . . . .

2. BACKGROUND: Borrower executed a promissory note payable to the order of Bank dated September 30, 2001, . . . evidencing a loan . . . which Note is further described as Note number 3980 in the principal amount of $2,600,000.00. Borrower has requested that this Note be renewed.

. . . .

21. GENERAL PROVISIONS.

. . . .

D. INTEGRATION CLAUSE. This written Note and all documents executed *concurrently* herewith, represent the *entire understanding* between the parties as to the Obligations and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties.

Appellant's App. p. 79–81 (emphasis supplied). This Note was scheduled to mature on February 28, 2002. Unlike the previous notes for Loan No. 3980, the October 2001 Note did not contain an "ADDITIONAL TERMS" section incorporating any of the previous commitment letters.

In addition to the series of notes for Loan No. 3980, Elbrecht also executed two other promissory notes with Harrington Bank. The first Note—executed by Elbrecht on April 25, 2000—was for $286,213.00 and due to mature on April 30, 2005. The second Note—executed by Elbrecht on March 28, 2001—was for $250,000.00 and due to mature on March 28, 2006.

In late January 2002, Elbrecht submitted a borrowing base calculation to FNB—the successor-in-interest by merger to Harrington Bank—for the period ending January 25, 2002. This report revealed that the outstanding balance of the loan—$2,453,903—exceeded the borrowing base by $1,016,364. FNB afforded Elbrecht the opportunity to cure this default by either decreasing the outstanding balance on the loan or pledging additional collateral. El-

brecht did not cure the default; however, Elbrecht did deposit $1 million in its FNB deposit account.

Because Loan No. 3980 was not in compliance with the borrowing base requirement contained in the May 1, 2001, commitment letter, FNB determined that Elbrecht was in default on the Note for that loan and exercised its remedy on default of cross-defaulting and accelerating all of Elbrecht's outstanding Notes with FNB. FNB also froze Elbrecht's deposit account, causing several checks to be dishonored. Based on these circumstances, on February 21, 2002, Elbrecht informed FNB that it would not or could not pay the outstanding balance on Loan No. 3980 when it became due and payable on February 28, 2002. The day after receiving this information from Elbrecht, FNB filed a complaint to collect the unpaid loan balances on all of Elbrecht's outstanding loans with FNB, plus interest and fees. In response, Elbrecht filed a counterclaim that FNB wrongfully set-off Elbrecht's account with FNB. FNB then filed a motion for summary judgment on its complaint but not on Elbrecht's counterclaim. Following the submission of briefs and designated evidence and a hearing on the matter, the trial court determined that the October 2001 Note contained a borrowing base requirement that Elbrecht violated, thereby causing Elbrecht to be in default:

5. That each of the aforementioned Notes, pursuant to the language in the loans' heading, "evidence a renewal of a loan from Harrington Bank, FSB." Further, each Note contains language in paragraph 1 stating that "this Note evidences a loan which includes all extensions, renewals, modifications and substitutions." It is clear from the language contained in each Note that the terms of the October 1, 2000 and September 30, 2001 Notes are incorporated into the terms of the October 30, 2001 Note. As such, the borrowing base requirement referenced in the Letter Agreements dated September 26, 2000 and May 1, 2001 is a term of the October 30, 2001 Note.

6. [Elbrecht does] not dispute that [it was] in violation of the borrowing base requirement. Therefore, as a matter of law, [Elbrecht was] in default of the October 30, 2001 Note on February 19, 2002.

Appellant's App. p. 23. Therefore, the trial court granted summary judgment in favor of FNB on its complaint and—finding no just reason for delay—entered final judgment.[3] Elbrecht now appeals.

## Discussion and Decision

■ Elbrecht appeals the trial court's Order granting summary judgment in favor of FNB. The dispute at hand arises out of the construction of a promissory note. The parties and the trial court agree that the language of the October 2001 Note is not ambiguous. *See* Appellant's App. p. 22 ("[T]he parties agree and the Court does now find that the terms of the October 30, 2001[,] Note are not ambiguous[.]"). When the language of a written contract is not ambiguous, its meaning is a question of law for which summary judgment is particularly appropriate. *Exide Corp. v. Millwright Riggers, Inc.*, 727 N.E.2d 473, 477 (Ind.Ct.App.2000). "The purpose of summary judgment is to terminate litigation

---

**3.** Elbrecht's counterclaim was not at issue during the summary judgment proceedings underlying this appeal. Moreover, because the trial court found Elbrecht to be in violation of the purported borrowing base require-

ment, the trial court did "not consider the other arguments of [FNB] alleging that [Elbrecht was] in default of the October 30, 2001 Note, nor the other arguments of [Elbrecht]." Appellant's App. p. 24.

about which there can be no factual dispute and which may be determined as a matter of law." *Bushong v. Williamson,* 790 N.E.2d 467, 474 (Ind.2003).

In reviewing a decision upon a summary judgment motion, we apply the same standard as the trial court: summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *see Fort Wayne Lodge, LLC v. EBH Corp.,* 805 N.E.2d 876, 882 (Ind.Ct.App.2004). The moving party bears the burden of showing prima facie that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law; once this burden has been met, the non-moving party must respond by setting forth specific facts demonstrating a genuine need for trial and cannot rest upon the allegations or denials in the pleadings. *See Fort Wayne Lodge, LLC,* 805 N.E.2d at 882. On appeal, the trial court's order granting a motion for summary judgment is cloaked with a presumption of validity. *Sizemore v. Erie Ins. Exch.,* 789 N.E.2d 1037, 1038 (Ind.Ct.App.2003). A party appealing from an order granting summary judgment has the burden of persuading the appellate tribunal that the decision was erroneous. *Id.* at 1038–39.

In arguing that the trial court erroneously granted summary judgment in favor of FNB, Elbrecht claims that the October 30, 2001, Note did not have a borrowing base requirement and therefore any subsequent default was precipitated by FNB's actions of wrongfully freezing his bank account and accelerating all of Elbrecht's outstanding loans with FNB. All the arguments raised by the parties depend on whether the October 2001 Note contained a borrowing base as part of its terms. Thus, we begin and end our inquiry with this dispositive issue.

■ As mentioned previously, the parties agree that the October 2001 Note is unambiguous. Generally, where no ambiguity is present the trial court is constrained by the "four corners" rule, which provides:

> [I]n construing [a] written instrument, the language of the instrument, if unambiguous, determines the intent of the instrument such that parol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence. Even if ambiguity exists, extrinsic evidence is only admissible to explain the instrument and not contradict it.

*Adams v. Reinaker,* 808 N.E.2d 192, 195 (Ind.Ct.App.2004) (citing *Clark v. CSX Transp., Inc.,* 737 N.E.2d 752, 757–58 (Ind. Ct.App.2000)). Extrinsic evidence is evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement. Black's Law Dictionary 578 (7th ed.1999).

■ The October 2001 Note does not contain a borrowing base requirement within its four corners. Furthermore, unlike the previous Notes for Loan No. 3980, it also does not incorporate a borrowing base requirement from any other source. The October 2001 Note simply specified, "the amount of advances under this Note that are outstanding and unpaid shall never exceed the Principal." Appellant's App. p. 79. To the extent that FNB argues that Elbrecht's submission of a "Borrowing Base Calculation for Period Ending January 25, 2002," Appellant's App. p. 91, evidences that the October 2001 Note had a borrowing base, we reiterate that extrinsic evidence may not be used when construing

an unambiguous contract. *See Reinaker*, 808 N.E.2d at 195.

Furthermore, we are unconvinced by FNB's argument that the terms and requirements found within the commitment letters were incorporated into the October 2001 Note through the use of the language, "This Note evidences a loan which includes all extensions, renewals, modifications and substitutions." First, the previous Notes contained this same language, yet they still incorporated the borrowing base requirements found in commitment letters by direct reference to those letters. If the quoted language—without more—incorporated the terms found in the commitment letters, then the "ADDITIONAL TERMS" sections found in previous renewal Notes would be meaningless and mere surplusage. *See United Consulting Eng'rs v. Bd. of Comm'rs of Hancock County*, 810 N.E.2d 351, 354 (Ind.Ct.App. 2004) ("The contract must be read as a whole and the language construed so as not to render any words, phrases, or terms ineffective or meaningless."). Moreover, the insertion of the "ADDITIONAL TERMS" section in previous Notes evidences that the Bank knew how to incorporate the borrowing base from an outside source. In the October 2001 Note, however, the Bank did not incorporate any additional terms from other sources. Rather, the "ADDITIONAL TERMS" section was deleted entirely from the October 2001 Note.

Second, and more importantly, the October 2001 Note also contained an integration clause that provided: "This written Note and all documents executed *concurrently* herewith, represent the *entire understanding* between the parties as to the Obligations and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties." Appellant's App. p. 81 (emphasis supplied). As explained previously, the October 2001 Note did not contain a borrowing base requirement within its four corners or incorporate one by reference. Nor were there any other documents executed concurrently with or subsequent to the October 2001 Note that specified that the Note had a borrowing base term. Thus, there was no indication within the entire agreement that the October 2001 Note had a borrowing base requirement as one of its terms.

Because we find that the October 2001 Note did not specify or incorporate a borrowing base, we find that the trial court erred in finding that Elbrecht defaulted on the Note by exceeding the borrowing base and entering summary judgment in favor of FNB. Moreover, because a question of fact remains as to whether Elbrecht would have been able to satisfy his obligation under the October 2001 Note when it became due had FNB not frozen the $1 million Elbrecht deposited with FNB and accelerated the other loans, we remand for further proceedings.

Reversed and remanded.

SULLIVAN, J., and MAY, J., concur.