# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JANET A. McSHARAR**
**ALBERT BARCLAY WONG**
**JENNIFER L. STRANGE**
Harrison & Moberly, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**I. PETER POLANSKY**
**ELIZABETH A. MOORE**
Polansky & Cichon, Chtd.
Chicago, Illinois

**FILED**

Jul 22 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TENDER LOVING CARE MANAGEMENT, INC., d/b/a TLC MANAGEMENT LLC, d/b/a LINCOLNSHIRE HEALTH CARE CENTER, INC., d/b/a/ RIVERVIEW HOSPITAL and LINCOLNSHIRE HEALTH CARE CENTER, INC., )<br><br>Appellants-Defendants, )<br><br>vs. )<br><br>RANDALL SHERLS, as Personal Representative of the ESTATE OF BERDIE SHERLS, DECEASED )<br><br>Appellee-Plaintiff. ) | No. 45A05-1311-CT-562 |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable John M. Sedia, Judge
Cause No. 45D01-1308-CT-161

**July 22, 2014**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

Tender Loving Care Management, Inc., d/b/a TLC Management, LLC, d/b/a Lincolnshire Health Care Center, Inc., d/b/a Riverview Hospital and Lincolnshire Health Care Center, Inc. (hereinafter "Lincolnshire") appeals challenging the trial court's judgment denying its motion to compel arbitration in a lawsuit filed by Randall Sherls, as personal representative of the Estate of Birdie Sherls (hereinafter "the Estate"). Lincolnshire challenges the trial court's conclusion that the arbitration agreement was ambiguous because the parties bound by the agreement are not clearly named.

The Estate cross appeals and argues that the trial court erred when it concluded that the decedent's son had the authority to waive the decedent's right to a jury trial. The Estate also contends that the trial court erred when it determined that the agreement was not an unconscionable adhesion contract.

We affirm in part and reverse in part and remand for proceedings consistent with this opinion.

**Facts and Procedural History**

Birdie Sherls was admitted to Lincolnshire on November 15, 2010, after she suffered a stroke. On the date she was admitted, Birdie's son, Oliver Sherls, signed Lincolnshire's "Facility Admission Agreement" on Birdie's behalf. The agreement provides in relevant part:

> This AGREEMENT is made by and between Lincolnshire (hereinafter referred to as the "Facility") and Birdie Sherls (hereinafter referred to as the "Resident") Oliver Sherls, the Resident's Legal Representative, who is the individual with legal access to the Resident's income and assets and Oliver Sherls, the Resident's Health Care Representative, who is the individual designated to make decisions

2

concerning the provision of health care if the Resident is incapable of making health care decisions.

***

Arbitration. Any disputes other [sic] matters in question arising out of or related to the Resident's receipt of care and services pursuant to this Agreement that are not settled by mediation within 60 days after a mediator is appointed are subject to binding Arbitration, which unless the parties mutually agree otherwise, shall be administered by the Alternative Dispute Resolution Service of the American Health Lawyers Association. A written Arbitration demand shall be made to the Facility within a reasonable amount of time after the dispute arises. The arbitration award shall be final. The Facility's enforcement of the Agreement's terms and conditions relating to payment for the care and services provided shall not be subject to Arbitration and the Facility may pursue all legal means of collection.

The Resident and Legal Representative understand and agree that by entering into this Agreement they are giving up and waiving the constitutional right to have any claim decided in a court of law before a judge and jury.

Appellant's App. pp. 24, 32.

On August 4, 2011, Birdie died from bed sores and stage four decubitus ulcers which led to sepsis. On August 1, 2013, her Estate filed a complaint against Lincolnshire alleging that its negligent care caused Birdie's death. Shortly thereafter, Lincolnshire filed a motion to compel arbitration and stay the proceedings.

A hearing was held on Lincolnshire's motion on November 7, 2013. The next day, the trial court issued its order denying the motion and stating in pertinent part:

2. There is no dispute that Birdie had appointed no health care representative and that there existed no judicially appointed guardian or other representative for Birdie pursuant to IC 16-36-1-5(a) at the time Oliver signed the Agreement. Nevertheless, under IC 16-36-1-5(a)(2)(C), Oliver was fully empowered to act on Birdie's behalf in signing the Agreement.

3. There is also no dispute that the Agreement is a contract of adhesion, drafted by Lincolnshire, clearly the party of superior bargaining strength

3

and that had Oliver not signed the Agreement on behalf of Birdie, Birdie would not have been admitted to Lincolnshire. . . .

4. . . . [I]t cannot be said that the Agreement that Oliver executed was " . . . such as no sensible man not under delusion or duress would make, and such as no honest and fair man would accept." The Agreement clearly imposed the limitation that any disputes regarding Birdie's care had to be submitted to arbitration, and that the parties were waiving proceeding before a Judge or jury to resolve these disputes. Sanford [v. Castleton Health Care Co., Inc.] held that such a limitation is reasonable and enforceable.

5. . . . The Agreement clearly binds Oliver and Birdie to its terms. It is unclear as to which entity was supposed to provide services and care to Birdie and to which Birdie and Oliver were bound to arbitrate: the opening paragraph only refers to "Lincolnshire" which is handwritten. The defendants named in the Complaint are: Tender Loving Care Management, Inc., d/b/a TLC Management, LLC, d/b/a Lincolnshire Health Care Center, Inc., d/b/a Riverview Hospital, and Lincolnshire Health Care Center, Inc. It is not clear to which of these entities to whom the word "Lincolnshire" in the Agreement refers. Oliver signed the Agreement both as Health Care Representative and Legal Representative. Another signature appears below those of Oliver, but it is illegible and does not appear by or on behalf of any of the named defendants nor any other entity. Moreover, at the bottom of every page of the Agreement is a logo that appears to read: "TLC Incorporated Health and Rehab."

6. The Court cannot determine which "Facility" is supposed to be bound to provide care and services and to which Birdie and Oliver are supposed to be bound to Arbitration regarding the provision of care and services to Birdie. The Agreement, in its opening paragraph, did not state: "Tender Loving Care Management, Inc., [or TLC Management, LLC, d/b/a Lincolnshire Health Care Center, Inc., d/b/a Riverview Hospital, or Lincolnshire Health Care Center, Inc.] By: ____."

***

[8]. It is impossible for the Court to determine, under the four corners of the Agreement, the entity that is identified by the words "Lincolnshire" and "facility." The surrounding circumstances can be used to ascertain the intent to the parties only to a limited degree: obviously, Oliver and Birdie sought to admit Birdie for nursing home care, and, it is equally obvious, whomever was going to provide nursing home care sought to have any dispute (other than fees for payment) resolved through arbitration. This is

4

still not enough to ascertain who was supposed to provide the care to Birdie and with whom Oliver and Birdie were bound to arbitrate.

[9]. The Court is not willing to enforce an agreement that does not state with sufficient clarity all the parties who are bound by it and who will benefit from it.

Appellant's App. pp. 7-9. Lincolnshire appeals the judgment and the Estate cross-appeals. Additional facts will be provided as necessary.

**Standard of Review**

Lincolnshire contends that the trial court erred when it denied the motion to compel arbitration. Written agreements to submit to arbitration are valid and enforceable, except where grounds exist for revocation of any contract. Ind. Code § 34-57-2-1(a). Arbitration is initiated by written notice by either party. I.C. § 34-57-2-2. If a party seeks arbitration, and the other party refuses to arbitrate, the party seeking arbitration may move a trial court to compel arbitration, and, where arbitration is ordered, the underlying action at the trial court must be stayed. I.C. § 34-57-2-3(a), (d).

Our review of a trial court's order denying a motion to compel arbitration is de novo. Brumley v. Commonwealth Bus. College Educ. Corp., 945 N.E.2d 770, 775 (Ind. Ct. App. 2011). Both Indiana and federal law recognize a strong public policy favoring enforcement of arbitration agreements. Safety Nat. Cas. Co. v. Cinergy Corp., 829 N.E.2d 986, 1000 (Ind. Ct. App. 2005), trans. denied. A party seeking to compel arbitration must satisfy two elements. Id. First, the party must demonstrate that there is an enforceable agreement to arbitrate the dispute. Id. Second, the party must prove the disputed matter is the type of claim that the parties agreed to arbitrate. Id.

5

## I. Whether the Agreement is Ambiguous

The goal of contract interpretation is to determine the intent of the parties when they made the agreement. Citimortgage, Inc. v. Barabas, 975 N.E.2d 805, 813 (Ind. 2012), reh'g denied. "We begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." Id. "[C]onstruction of the terms of a written contract is a pure question of law for the court, reviewed de novo." Harrison v. Thomas, 761 N.E.2d 816, 818 (Ind. 2002).

"A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation." Barabas, 975 N.E.2d at 813 (quotation omitted). If the language is unambiguous, we may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument. Bd. of Commr's of Delaware Cnty. v. Evans, 979 N.E.2d 1042, 1046 (Ind. Ct. App. 2012); Niezer v. Todd Realty, Inc., 913 N.E.2d 211, 215 (Ind. Ct. App. 2009), trans. denied. However, if the language is ambiguous, we will construe the terms to determine and give effect to the intent of the parties when they entered into the contract. Barabas, 975 N.E.2d at 813.

Courts may properly consider all relevant evidence to resolve the ambiguity.[1] University of Southern Indiana Found. v. Baker, 843 N.E.2d 528, 535 (Ind. 2006).

---

[1] Lincolnshire argues that any ambiguity concerning its identity is latent and we agree. However, our supreme court abandoned a prior distinction between patent and latent ambiguities. University of Southern Indiana Found. v. Baker, 843 N.E.2d 528 (Ind. 2006). Before Baker, extrinsic evidence could only be used to address latent ambiguities in written instruments, i.e. ambiguities that arose only by reference to extrinsic facts, and not patent ambiguities, which arose from the language of the instrument

6

"Extrinsic evidence is evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement." CWE Concrete Const., Inc. v. First Nat'l Bank, 814 N.E.2d 720, 724 (Ind. Ct. App. 2004), trans. denied. If a contract is ambiguous, it should be construed against the party who furnished and drafted the agreement. Keithley's Auction Serv. v. Children of Jesse Wright, 579 N.E.2d 657, 659 (Ind. Ct. App. 1991).

As the trial court found, on the face of the contract Oliver and Birdie (and therefore Birdie's Estate) are clearly bound to its terms. However, the trial court also determined that "[i]t is unclear as to which entity was supposed to provide services and care to Birdie and to which Birdie and Oliver were bound to arbitrate: the opening paragraph only refers to 'Lincolnshire' which is handwritten." Appellant's App. p. 8. Lincolnshire argues that if reference to its health care facility and corporate entity solely by the name "Lincolnshire" is ambiguous, the parties' intent is clearly established by extrinsic evidence.

Oliver averred that Birdie was admitted to "a nursing home commonly referred to as Lincolnshire located at 8380 Virginia Street in Merrillville, Indiana." Id. at 105. In his affidavit, Oliver also made reference to discussions he had with Lincolnshire's "admittance personnel." Id. The evidence in the record establishes that Oliver and Birdie understood that they were entering into a contract with Lincolnshire Health Care Center,

---

itself. Baker. 843 N.E.2d at 534-35 (stating that "the distinction between patent and latent ambiguities is not useful, and it is proper to admit extrinsic evidence to resolve any ambiguity").

which agreed to provide certain services to Birdie. Moreover, the Estate's complaint named Tender Loving Care Management, Inc., d/b/a TLC Management, LLC, d/b/a Lincolnshire Health Care Center, Inc., d/b/a Riverview Hospital and Lincolnshire Health Care Center, Inc. as the Defendants. The extrinsic evidence in the record resolves the ambiguity surrounding the identity of the parties to the Agreement; therefore, we conclude the trial court erred when it found that the Agreement was unenforceable because of ambiguity.

**II. Whether Oliver had Authority to Enter Into the Agreement on Birdie's Behalf**

Next, we consider the Estate's argument raised in its cross-appeal that Oliver lacked authority to enter into the Agreement on behalf of Birdie. The trial court found in relevant part:

> There is no dispute that Birdie had appointed no health care representative and that there existed no judicially appointed guardian or other representative for Birdie pursuant to IC 16-36-1-5(a) at the time Oliver signed the Agreement. Nevertheless, under IC 16-36-1-5(a)(2)(C), Oliver was fully empowered to act on Birdie's behalf in signing the Agreement.

Appellant's App. p. 7.

Indiana Code section 16-36-1-5(a) provides that certain individuals may consent to health care if an individual is incapable of making a decision concerning the proposed health care and the individual has not appointed a health care representative pursuant to Indiana Code section 16-36-1-7. See also Ind. Code § 16-36-1-4(a). The parties do not dispute the fact of Birdie's incapacity and lack of an appointed health care representative. Therefore, this issue is resolved pursuant to section 16-36-1-5(a), which provides:

> [C]onsent to health care may be given:

(1) by a judicially appointed guardian of the person or a representative appointed under section 8 of this chapter; or

(2) by a spouse, a parent, *an adult child*, or an adult sibling, unless disqualified under section 9 of this chapter, if:

> (A) there is no guardian or other representative described in subdivision (1);
> (B) the guardian or other representative is not reasonably available or declines to act; or
> (C) the existence of the guardian or other representative is unknown to the health care provider . . .

(Emphasis added).

The Estate concedes that under Indiana Code section 16-36-1-5(a), Oliver had authority to contract with Lincolnshire to provide health care for Birdie, but argues that the statute did not give Oliver authority to enter into an agreement to arbitrate any claims Birdie might have against Lincolnshire. See Appellee's/Cross-Appellant's Br. at 12. In support of his argument, the Estate cites to Article I, Section 20 of the Indiana Constitution, which provides: "In all civil cases, the right of trial by jury shall remain inviolate."

Constitutional rights are not absolute and may be waived. Sanford v. Castleton Health Care Center, LLC., 813 N.E.2d 411, 420 (Ind. Ct. App. 2004), trans. dismissed (citation omitted). Trial Rule 38(E), which governs the right to a jury trial, states:

> Nothing in these rules shall deny the parties the right by contract or agreement to submit or to agree to submit controversies to arbitration made before or after commencement of an action thereon or deny the courts power to specifically enforce such agreements.

"This trial rule recognizes a 'very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties.'" Sanford, 813 N.E.2d at 420 (quoting Ransburg v. Richards, 770 N.E.2d 393, 395 (Ind. Ct. App. 2002), trans denied).

9

In Sanford, the contract Sanford executed, in her capacity as the decedent's legal representative, to admit the decedent to the health care facility contained an arbitration clause. Under the terms of the contract, Sanford waived the decedent's right to a jury trial and agreed to submit any future controversies to arbitration. Our court affirmed the trial court's order compelling arbitration of the decedent's Estate's claims after concluding that the waiver was knowing and voluntary.

Recently, in Anonymous, M.D. v. Hendricks, 994 N.E.2d 324, 328 (Ind. Ct. App. 2013), our court observed that the Sanford court "was not specifically asked in Sanford to decide whether the representative's authority extended to executing arbitration agreements on the patient's behalf." The Estate relies on this observation to support its argument that Oliver did not have the authority to waive Birdie's right to a jury trial.

Lincolnshire only agrees to provide services to patients, or their representatives, who have entered into the Agreement. Tr. p. 5. Although Oliver was not Birdie's legal representative or court-appointed guardian, because Birdie was incapacitated, as her adult son, Oliver had authority pursuant to Indiana Code section 16-36-1-5(a) to enter into the Agreement on her behalf. Section 16-36-1-5 only specifically authorizes adult children to consent to health care on their parent's behalf. However, to obtain nursing care services for Birdie, either Birdie or an individual named in section 16-36-1-5 was required to enter into the Agreement containing the arbitration clause with Lincolnshire. Under these circumstances, we conclude, as did the trial court, that Oliver had the authority to enter into the Agreement, and therefore, had the authority to waive Birdie's right to a jury trial.

10

### III. Whether the Agreement is an Unconscionable Adhesion Contract

Finally, in its cross-appeal, the Estate claims that the trial court erred when it found that the Agreement was not an unconscionable adhesion contract. In <u>Sanford</u>, our court described adhesion contracts and their enforceability as follows:

> [A]n adhesion contract–i.e., "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it"–is not per se unconscionable. Rather, a contract is unconscionable if a great disparity in bargaining power exists between the parties, such that the weaker party is made to sign a contract unwillingly or without being aware of its terms. To be unconscionable, "[t]he contract must be 'such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept.'" A contract is not unenforceable merely because one party enjoys advantages over another.

813 N.E.2d at 417 (internal citations omitted).

The Estate argues that the Agreement is unconscionable because the Agreement "gives [Lincolnshire] the sole power to choose the arbitration forum, and given that the same is the 'American Health Lawyers Association', it possesses a rather hearty 'home team advantage.'" Appellee's/Cross-Appellant's Br. at 13. The Estate claims that Oliver, as an average lay person, could not have understood "the extreme advantage afforded by this home team forum selection provided by the arbitration clause." <u>Id</u>.

First, we observe that the Estate does not allege that Oliver had difficulty understanding the terms of the Agreement or that he unwillingly signed the Agreement. And the arbitration clause does not limit the Estate's ability to recover damages from Lincolnshire's alleged negligent acts.

11

The Estate's claim that the American Health Lawyers Association has some bias favoring health care centers is not supported by any evidence, but is simply conjecture.[2] And the Estate is not without remedy if an arbitrator demonstrates bias toward Lincolnshire. Although judicial review of arbitration awards are narrow in scope, a trial court may vacate an arbitration award where "there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party[.]" Ind. Code § 34-57-2-13(a)(2); see also Droscha v. Shepherd, 931 N.E.2d 882 (Ind. Ct. App. 2010).

For all of these reasons, we conclude that the trial court properly found that "it cannot be said that the Agreement that Oliver executed was ' . . . such as no sensible man not under delusion or duress would make, and such as no honest and fair man would accept.'" Cf. Sanford, 813 N.E.2d at 418 (acknowledging the limitation imposed on the admittee by virtue of the arbitration clause, but rejecting Sanford's argument that the admission agreement was unconscionable because it "required the nursing home admittee to accept the arbitration clause on a take-it-or-leave-it basis" and did not "delineate to unsuspecting admittees the process of arbitration").

**Conclusion**

The trial court properly found that due to Birdie's incapacity, Oliver, her adult son, had the authority to enter into the Agreement providing for arbitration of any future

---

[2] We also note that in its brief, Lincolnshire states that the American Health Lawyers Association no longer accepts arbitrations without a post-dispute agreement to arbitrate. Therefore, in its motion to compel, Lincolnshire asked the trial court to compel arbitration pursuant to the provisions of the Uniform Arbitration Act found at Indiana Code chapter 34-57-2. See Appellant's Reply Br. p. 13; see also Appellant's App. p. 22.

controversies between the parties. We also affirm the trial court's finding that the Agreement is not an unconscionable adhesion contract.

However, the trial court erred when it found that the Agreement was ambiguous as to the identity of the parties bound by it. We conclude that the parties' identity is not ambiguous after considering the parties' intent established by extrinsic evidence. Therefore, the Agreement is enforceable. Accordingly, on remand, we direct the trial court to grant Lincolnshire's motion to compel arbitration.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

FRIEDLANDER, J., and PYLE, J., concur.