FILED

May 19 2020, 5:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Cynthia A. Marcus
Marcus Law Firm, LLC
Carmel, Indiana

ATTORNEY FOR APPELLEE

Stephenie K. Gookins
Cate, Terry & Gookins LLC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Marriage of:<br><br>Rick Story,<br><br>*Appellant-Petitioner,*<br><br>v.<br><br>Allyson Story,<br><br>*Appellee-Respondent.* | May 19, 2020<br><br>Court of Appeals Case No.<br>19A-DC-2385<br><br>Appeal from the Hamilton<br>Superior Court<br><br>The Honorable Andrew R. Bloch,<br>Magistrate<br><br>The Honorable Jeffrey C. Eggers,<br>Magistrate<br><br>Trial Court Cause No.<br>29D02-1706-DC-5546 |

**Najam, Judge.**

## Statement of the Case

[1]     Rick Story ("Husband") and Allyson Story ("Wife") entered into a mediated settlement agreement, which the dissolution court adopted and incorporated into the parties' final dissolution decree.  When Wife subsequently asked

Husband to sign an addendum to the settlement agreement and Husband refused, Wife requested that the dissolution court intervene to resolve the dispute. After a hearing, and after the court had issued an order on Wife's motion, Husband filed a motion to clarify the order. Husband now appeals the dissolution court's order on his motion to clarify. Husband presents two issues for our review:

1. Whether the dissolution court erred when it found that Wife is entitled to a post-retirement survivor benefit offered through Husband's military retirement program.

2. Whether the dissolution court erred when it ordered Husband and Wife to share the cost of the premiums for that survivor benefit.

We affirm.

## Facts and Procedural History

Husband and Wife were married in October 1992, and they have three adult children together. In May 2017, Husband, who was then fifty-one years old, "left the U.S. Army reserves" after multiple deployments and more than thirty years of service. Appellant's Br. at 6. The next month, Husband filed a petition for dissolution of the marriage.

In February 2018, Husband and Wife entered into a mediated settlement agreement, which provided in relevant part as follows:

24. Qualified Domestic Relations Order/Military Pension Division Order (QDRO/MPDO) [("QDRO provision")]. Wife

shall be entitled to receive fifty percent (50%) of Husband's accrued vested monthly benefit from his Military Reserve Annuity Retirement from the date of marriage through the value determined as of June 14, 2017. *Wife shall be treated as Husband's surviving spouse for the purpose of any pre-retirement survivor's benefit and shall be entitled to receive her Military Reserve Survivor Pension*, free and clear of any claim by Husband. In the event Husband is entitled to any cost-of-living adjustment, said COLA shall be applied to Wife's interest in the plan as well.

\* \* \*

*Wife shall be treated as Husband's irrevocable beneficiary for Husband's Military Reserve Annuity Retirement and Husband shall make the necessary election in a timely manner to effectuate survivor coverage for Wife*, if he has not already done so, and shall execute such paperwork as is required/necessary within seven (7) days after the Court's approval of this Decree. The level of Wife's survivor coverage shall be that which will provide her with the same benefit payments after Husband's death that she was eligible to receive or receiving prior to his death, pursuant to this Agreement.

Appellant's App. Vol. 2 at 28-29 (emphases added). The dissolution court adopted and incorporated the settlement agreement into the final dissolution decree.

[5]     Husband was a member of the U.S. Army Reserves until May 2017. Unlike active duty members of the U.S. military, who generally receive their military retirement pay immediately upon retirement, reservists who leave the military prior to reaching retirement age must wait to receive their military retired pay. As used in the parties' settlement agreement, it is undisputed that "Military

Reserve Annuity Retirement" means Husband's military retired pay, which will start when he reaches fifty-seven years of age ("retirement age").

[6] After the decree was entered, Husband executed "DD Form 2656-1,"[1] which is entitled "Survivor Benefit Plan (SBP) Election Statement for Former Spouse Coverage."[2] Table Exs. Vol. 3 at 218.[3] The SBP is optional and provides survivor benefits to Wife should Husband predecease her. The premiums for the SBP are to be deducted from Husband's military retired pay. Because the SBP starts before Husband will receive his military retired pay, the premiums for survivor coverage during the pre-retirement period "accrue" and will be due when Husband starts receiving his retirement pay. Tr. Vol. 2 at 16. The total amount of the premiums due for the SBP, including the "post-retirement" period (after Husband attains retirement age), is not yet ascertainable, but that coverage could cost as much as $100,000 over Husband's life.

[7] In order to implement the QDRO provision, Wife submitted an application to the Department of Finance and Accounting Services ("DFAS"), a division within the United States Department of Defense ("DOD"). In response to Wife's application, in July, DFAS wrote Wife a letter requesting additional information necessary to "calculate the division of the retirement," including

---

[1] Wife also signed this form.

[2] In the "Remarks" section of this form, Husband stated that he was a "gray area retiree not yet reaching retirement age, but a member of the retired reserves." Table Exs. Vol. 3 at 218.

[3] Our pagination of the Exhibits Volume is based on the .pdf pagination.

Husband's "years of creditable service at the time of the divorce." Table Exs. Vol. 3 at 208. The DFAS letter also stated: "If your divorce decree specifies that you are to be designated as a former[-]spouse beneficiary for the Survivor Benefit Plan (SBP), you must make a 'deemed election' for coverage . . . using a DD Form 2656-10." *Id.* at 208-09. Wife's counsel requested that Husband provide the additional information requested in the letter, which he did by email in September. And even though Husband had previously made the survivor benefit plan election using DD Form 2656-1, Husband signed DD Form 2656-10 and sent it to Wife, who also signed it and submitted it to DFAS. DD Form 2656-10 is entitled "Survivor Benefit Plan (SBP)/Reserve Component (RC) SBP Request for Deemed Election." *Id.* at 216.

[8] Wife's counsel then prepared an addendum to the mediated settlement agreement for the parties' signatures "that included the necessary information to meet the DFAS requirements" for calculating the division of Husband's military retired pay. Appellee's Br. at 8. Despite his initial cooperation, Husband refused to sign the addendum. Husband told Wife's attorney that Husband "would not be willing to sign [the addendum] because the cost of the premiums for the Survivor Benefit Plan had not been accounted for in the settlement agreement."[4] Tr. Vol. 2 at 7-8.

---

[4] Neither party has included a copy of the proposed addendum in the appendix on appeal.

In December 2018, Wife filed a request for the dissolution court's intervention to secure Husband's cooperation in signing the agreed addendum. In the meantime, in March 2019, DFAS sent a letter to Wife stating in relevant part:

> Your request has been honored and the Deemed Election is complete. You will be entered as the former spouse SBP [Survivor Benefit Plan] beneficiary when the member retires and begins to receive retired/retainer pay.
>
> By law, the monthly SBP premiums must be deducted from the member's military retirement pay. DFAS cannot deduct premiums from the former spouse, regardless of the terms of the applicable court order.

Table Exs. Vol. 3 at 227.

At a hearing on Wife's request for the court's intervention in May 2019, the parties' counsel presented oral argument, the parties each testified briefly, and both parties offered exhibits that were admitted without objection. Wife's counsel advised the court that the DFAS documentation to secure her survivor benefit had been submitted and approved, and she stated: "this really comes down to an argument of who's going to pay for it. The decree is silent on who pays for it." Tr. Vol. 2 at 8. The parties also disputed whether their agreement included both pre-retirement and post-retirement survivor benefit coverage. Wife testified that she expected survivor benefit coverage for "[t]he rest of [her] life." *Id.* at 10. But Husband testified that he had made the election required by the settlement agreement, which, according to Husband, provided that he may cancel Wife's survivor benefit coverage at his option after he reaches retirement

age. Husband testified that there is "nothing in the agreement" that would prevent him "from doing that." *Id.* at 18.

[11]    Following the hearing, on May 29, the dissolution court issued an order stating:

> 1. It is clear from the Mediated Settlement Agreement that Wife is entitled to *pre-retirement* survivor's benefits. See Page 24.
>
> 2. The best evidence indicates the actual title for those benefits is "The Reserve Component Survivor Benefit Plan (RCSBP)."
>
> 3. The Agreement is silent as to how the premium would or will be paid.
>
> 4. Evidence presented to the Court is that the premium must be withheld solely from the soldier's paid benefits, not the ex-spouse's benefits.
>
> 5. Equity is best served, since neither party mentioned payment nor is it mentioned in the Mediated Settlement Agreement, that each party should pay one-half of the premium.
>
> 6. Therefore, it is ORDERED, that the Wife shall reimburse Husband 50% of what is withheld from his benefit each time it is withheld for the premium.

Appellant's App. Vol. 2 at 46-47 (emphasis added).

[12]    On June 3, Husband filed a motion to clarify the court's May 29 order:

> 1. The Court heard evidence at the hearing of May 23, 2019[,] regarding whether the parties['] Settlement Agreement provided that Wife was entitled to either the "pre-retirement annuity" (RCSBP) and/or "post-retirement annuity" (SBP).

2. The Court ruled that Wife was entitled to the pre-retirement Reserve Component Survivor's Benefit Plan (RCSBP).

3. [Husband] respectfully requests that the Court clarify that Wife is not entitled to the *post-retirement* Survivor's Benefit Plan[,] or SBP.

WHEREFORE, [Husband] respectfully requests clarification that [Wife] is not entitled to [Husband's] retired military pay SBP and for all other relief just and proper in the premises.

*Id.* at 48 (emphasis added). After a change of judge, the court ruled on Husband's motion as follows:

The Court's May 29, 2019 Order is clarified as follows:

a. *[Wife] is entitled to receive a portion of [Husband's] post-retirement survivor benefit plan, or SBP, as well as the pre-retirement, and RC-SBP.* In Order to be consistent, [Wife] shall reimburse [Husband] fifty percent of what is withheld from [Husband's] benefit each time it is withheld for his RC-SBP and SBP.

*Id.* at 50-51 (emphasis added). This appeal ensued.

# Discussion and Decision

## *Issue One: Wife's Survivor Benefit*

[13] Husband first contends that the dissolution court erred when it interpreted the parties' settlement agreement to require that he maintain survivor coverage for Wife after he reaches retirement age. Initially, we note that Husband refers to a "pre-retirement" survivor benefit, which he calls the "RCSBP," and a "post-retirement" survivor benefit, which he calls the "SBP," as though they were two

separate and unrelated plans.[5] And the dissolution court adopted those labels in its orders. However, as discussed below, Husband elected one survivor benefit plan, which covers both the pre- and post-retirement periods. The question presented on appeal is whether, as Husband asserted at the evidentiary hearing, the settlement agreement permits him to *cancel* the survivor benefit election after he reaches retirement age.

[14] As our Supreme Court has observed, "[w]hen a party asks a court to clarify a settlement agreement, the court's task is one of contract interpretation." *Ryan v. Ryan*, 972 N.E.2d 359, 363 (Ind. 2012). And as we have stated:

> "The goal of contract interpretation is to determine the intent of the parties when they made the agreement." *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). This court must examine the plain language of the contract, read it in context and, whenever possible, construe it so as to render every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. *Id.* Construction of the terms of a written contract generally is a pure question of law. *Id.* If, however, a contract is ambiguous, the parties may introduce extrinsic evidence of its meaning, and the interpretation becomes a question of fact. *Broadbent v. Fifth Third Bank*, 59 N.E.3d 305, 311 (Ind. Ct. App. 2016), *trans. denied*. "A word or phrase is ambiguous if reasonable people could differ as to its meaning."

---

[5] Husband avers, without any citation to the record or authority, that the pre-retirement Reserve Component Survivor Benefit Plan is "separate" and "has no effect after the servicemember begins receiving retired pay." Appellant's Br. at 7. But, as Husband testified, and as we discuss later, the survivor benefit is a single election with an option of canceling the coverage after the servicemember reaches retirement age. The relevant DOD regulations do not refer to a "pre-retirement survivor benefit" or a "post-retirement survivor benefit."

*Id.* A term is not ambiguous solely because the parties disagree about its meaning. *Id.*

\* \* \*

If the language is deemed ambiguous, the contract terms must be construed to determine and give effect to the intent of the parties when they entered into the contract. [*Tender Loving Care Mgmt.*, 14 N.E.3d at 72]. "Courts may properly consider all relevant evidence to resolve an ambiguity." *Id.* "'Extrinsic evidence is evidence relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement.'" *Id.* (quoting *CWE Concrete Const., Inc. v. First Nat'l Bank*, 814 N.E.2d 720, 724 (Ind. Ct. App. 2004), *trans. denied*).

*Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied*.

[15] Here, for the first time on appeal, the parties assert that the settlement agreement is unambiguous, that the plain meaning of the agreement supports his or her interpretation, respectively, and that the resort to extrinsic evidence is unnecessary. However, at the hearing, the parties submitted, and asked the dissolution court to consider, extrinsic evidence relevant to the survivor benefit coverage, namely, their testimony and exhibits admitted at the hearing. In its first order on Wife's request for court intervention, the court stated that it relied upon "the best evidence" to determine "the actual title" for the survivor benefits, which does not appear in the agreement. Appellant's App. Vol. 2 at 46. And in his motion to clarify, Husband acknowledged that the dissolution

court "heard evidence . . . regarding whether the parties' settlement agreement provided that Wife was entitled to either the 'pre-retirement annuity' . . . and/or 'post-retirement annuity[.]'" *Id.* at 48. Thus, it is clear that the dissolution court found the settlement agreement ambiguous and considered extrinsic evidence when it relied on testimony and exhibits to interpret the survivor benefit provisions in the agreement.

[16] Again, the parties' mediated settlement agreement provides in relevant part as follows:

> 24. Qualified Domestic Relations Order/Military Pension Division Order (QDRO/MPDO) [("QDRO provision")]. Wife shall be entitled to receive fifty percent (50%) of Husband's accrued vested monthly benefit from his Military Reserve Annuity Retirement from the date of marriage through the value determined as of June 14, 2017. *Wife shall be treated as Husband's surviving spouse for the purpose of any pre-retirement survivor's benefit and shall be entitled to receive her Military Reserve Survivor Pension*, free and clear of any claim by Husband. In the event Husband is entitled to any cost-of-living adjustment, said COLA shall be applied to Wife's interest in the plan as well.
>
> * * *
>
> *Wife shall be treated as Husband's irrevocable beneficiary for Husband's Military Reserve Annuity Retirement and Husband shall make the necessary election in a timely manner to effectuate survivor coverage for Wife*, if he has not already done so, and shall execute such paperwork as is required/necessary within seven (7) days after the Court's approval of this Decree. *The level of Wife's survivor coverage shall be that which will provide her with the same benefit payments after Husband's death that she was eligible to receive or receiving prior to his death*, pursuant to this Agreement.

*Id.* at 28-29 (emphases added).

[17]     On appeal, Husband contends that the plain language of the agreement provides for a survivor benefit to Wife only until he reaches retirement age, or during the "pre-retirement" period. But Wife maintains that "the totality of the [agreement's] language" shows that the parties intended that Wife would also have survivor benefit coverage after Husband reaches retirement age, or "post-retirement." Appellee's Br. at 11. Nevertheless, Wife points out, and Husband agrees, that the agreement uses terminology that differs from that used by the DOD in describing Husband's retirement benefits, especially the optional survivor benefit coverage. The QDRO provision uses the following terms that do not appear in any relevant DOD document: "Military Reserve Annuity Retirement"; "pre-retirement survivor's benefit"; and "Military Reserve Survivor Pension." Thus, in order to determine whether the parties intended Wife's survivor benefit coverage to continue after Husband reaches retirement age, we must first understand how Husband's military retirement program is structured.

[18]     Because that structure is not discernible on the face of the settlement agreement, and because the parties' agreement uses terms that differ from the DOD documents explaining survivor benefit coverage, the dissolution court resorted to extrinsic evidence to resolve the ambiguity in the agreement. We consider the extrinsic evidence most favorable to the dissolution court's judgment to unpack and interpret the QDRO provision. *Celadon Trucking Servs., Inc.*, 70

N.E.3d at 839. In particular, we consider the same exhibits and testimony presented to the dissolution court on the issue of survivor benefit coverage.

[19] At the hearing on Wife's request for court intervention, Husband submitted to the dissolution court his Exhibit A, which included excerpts from the DOD's "Financial Management Regulations" explaining the structure of his military retirement program. The relevant excerpts provide as follows:

• "[The Survivor Benefit Plan ("SBP") was established] to provide a survivor benefit program for military personnel in retirement . . . [that would] provide [a retiree's] survivors an annuity payable *after the retiree's death*." Table Exs. Vol. 3 at 83 (emphasis added).

• "[The Reserve Component Survivor Benefit Plan, or] RCSBP[,] *extends eligibility* to the Survivor Benefit Plan (SBP) to Reserve Component members who would otherwise be eligible to receive retired pay except they have not yet reached retirement age. RCSBP allows members to provide an annuity based on their retired pay to qualified survivors." *Id.* at 168.

• "The RCSBP is a benefit plan that enables members who served in the Reserve Components to leave a benefit called an 'annuity.' An annuity is a monthly payment that normally lasts the lifetime of the beneficiary after the member passes away. The amount of the monthly payment is a percentage of the retired pay, and that percentage depends upon the election the member made when the member signed up for RCSBP." *Id.* at 169.

• "*A member electing to participate must designate an immediate election, a deferred election, or indicate a decision to delay the election until reaching retirement age.* These are described as Options A, B, or C.

    A. Option A. The member defers a survivor annuity election or declines coverage until retirement age. There is

no coverage for the years between becoming eligible for retirement and reaching retirement entitlement age. If a member dies before reaching retirement age, no survivor annuity is payable. . . .

B. Option B. The member elects to provide a deferred survivor annuity that begins on the date that the member would have attained the age of 60, or on the day after the member's death, whichever is later. . . .

C. Option C. *The member elects to provide an immediate survivor annuity beginning on the day after the member's death, whether before or after reaching retirement age*."

• "Elections [of the RCSBP coverage] . . . are *generally irrevocable* unless revoked before the expiration of the 90-day period[ for filing the elections]."

• "[One exception to the irrevocability of the RCSBP coverage is that a] member may change the beneficiary election to . . . remove former spouse coverage as shown in Chapter 43, section 4306[, *which requires a court order that permits such a change*.]"

*Id.* at 119, 173-79 (emphases added).

Further, at the hearing, Husband testified as follows: "I had to elect SBP to get the Reserve Component Survivor Benefit Plan[,] which is the pre-retirement. They're not severable in election. However, I have the option to cancel the SBP soon after reaching retirement age." Tr. Vol. 2 at 18. In other words, Husband elected Option C, which provides for immediate survivor coverage for Wife that will continue after Husband has reached retirement age, unless he cancels that coverage.

[20]    Turning to the QDRO provision in the settlement agreement, the parties do not dispute that "Military Reserve Annuity Retirement" refers to Wife's share in and entitlement to a coverture fraction of Husband's "military retired pay," which he will start receiving when he turns fifty-seven years old. Appellant's Br. at 6. The provision then continues and states that Wife "shall be treated as Husband's surviving spouse for the purpose of any pre-retirement survivor's benefit *and* shall be entitled to receive her Military Reserve Survivor Pension, free and clear of any claim by Husband."[6] Appellant's App. Vol. 2 at 28 (emphasis added). Thus, again, while the parties do not dispute that Wife is entitled to the pre-retirement survivor benefit, the QDRO provides that Wife is also entitled to receive her "Military Reserve Survivor Pension." The term "survivor pension" does not appear in the DOD documents. Rather, as discussed below, the survivor benefit is an annuity which includes post-retirement survivor benefit coverage.

[21]    Husband's counsel told the dissolution court that "a military reserve survivor pension doesn't exist" but argued that it can be construed to mean the Reserve Component Survivor Benefit Plan, or "RCSBP," which counsel equated with "a pre-retirement survivor benefit and not a post-retirement benefit." Tr. Vol. 2 at 21. In a memorandum submitted to the dissolution court, Husband asserted

---

[6] In his brief on appeal, Husband modifies the meaning of this sentence by substituting the word "those" for the word "and" when he states that, "The sentence goes on to state that Wife shall receive *those* 'Military Reserve Survivor Pension' or proceeds of the RCSPB free and clear of any claim by Husband." Appellant's Br. at 12 (emphasis added). In so doing, Husband equates the pre-retirement survivor benefit with the Military Reserve Survivor Pension, as if they were one and the same and co-extensive. They are not.

that the "only reserve annuity available to Wife is the RCSBP," Table Exs. Vol. 3 at 8, and, likewise, in his brief on appeal Husband asserts that use of the word "Reserve" is a reference to the RCSBP, which, according to Husband includes only the pre-retirement benefit. Appellant's Br. at 12. As explained below, we cannot agree.

[22] The erroneous use of the term "survivor pension" rather than "survivor annuity" in the agreement does not affect our analysis. Regardless of the terminology, and accepting Husband's contention that the "Military Reserve Survivor Pension" mentioned in the agreement refers to the RCSBP, his contention that the RCSBP includes only a pre-retirement survivor benefit cannot be reconciled either with his own testimony or with the DOD evidence of the survivor annuity available under the Reserve Component Survivor Benefit Plan.

[23] Husband testified, correctly, that pre-retirement survivor coverage and post-retirement survivor coverage are "not severable" when an election for pre-retirement coverage is made. Tr. Vol. 2 at 18. In other words, there is no stand-alone pre-retirement survivor benefit. The DOD documents admitted into evidence at the hearing show that Husband had three options when he signed up for the Reserve Component Survivor Benefit Plan, or RCSBP. Option A allows the member to defer a survivor annuity election until retirement age, and Option B allows the member to elect survivor annuity coverage that begins at retirement age. Husband chose Option C, the one option that provides survivor annuity coverage during both the pre-retirement

and post-retirement periods. Thus, the RCSBP does not limit survivor coverage to the pre-retirement period, and all three options contemplate and provide for post-retirement coverage. And, as the DOD regulations make clear, an election under Option C, the option that Husband selected, provides a survivor benefit that pays an annuity "after the member's death, whether before or after reaching retirement age." Table Exs. Vol. 3 at 173-74.

[24] Husband equates and conflates pre-retirement survivor benefit coverage with the Reserve Component Survivor Benefit Plan. However, while the RCSBP extends eligibility for survivor coverage to retired reservists who have not yet reached retirement age, pre-retirement-age survivor benefits are only one feature of the plan. Each of the three options for the RSCBP includes a post-retirement survivor annuity. Thus, Husband either misunderstands or misconstrues the RCSBP.

[25] Further, the QDRO provision in the parties' agreement states explicitly both that "Wife shall be treated as Husband's irrevocable beneficiary for Husband's Military Reserve Annuity Retirement" and that "Husband shall make the necessary election in a timely manner to effectuate survivor coverage for Wife[.]" Appellant's App. Vol. 2 at 29. The first clause of this sentence is a declaration that Wife has an irrevocable present vested interest in a coverture fraction of Husband's military retired pay. The second clause of this sentence expressly provides that Husband *shall* elect "survivor coverage for Wife." There is no adjective modifying or qualifying the term "survivor coverage." The presence of these two clauses within the same sentence indicates that the

survivor coverage is contemporaneous with and appurtenant to Husband's retirement pay. As such, this sentence connects Wife's survivor benefit coverage directly to Husband's military retired pay, which is, of course, his post-retirement annuity. And this provision corresponds exactly with the post-retirement coverage under Option C, which Husband elected.

[26] Likewise, the evidence does not support Husband's contention that under the settlement agreement he has a unilateral, unqualified right to cancel Wife's survivor benefit coverage after he reaches retirement age. First, there is no provision within the agreement to that effect. Second, Husband's military retirement plan states that if a plan participant is required to provide former spouse coverage based on a court order, he can only change the election by providing "a certified copy of a court order that permits such a change." Table Exs. Vol. 3 at 119 ("Changes to a Former Spouse Election"). Husband's contention fails to account for DOD restrictions on the cancellation of former spouse survivor coverage.

[27] Thus, contrary to Husband's assertions that the settlement agreement does not provide for a post-retirement survivor benefit and that he is entitled to "cancel" the survivor benefit "after reaching retirement age.," Tr. Vol. 2 at 18, Wife's survivor coverage will continue after Husband attains retirement age. And the settlement agreement provides that Husband shall not "take any action which defeats or impairs the value which Wife is to receive pursuant to the provisions hereunder" including any "subsequent designation" that "may impair or diminish Wife's benefit." Appellant's App. Vol. 2 at 29. This means that

Husband may not cancel or alter his election for Wife's survivor benefit coverage.

[28] In sum, Husband elected survivor coverage for Wife effective during his pre-retirement period. By its terms, that coverage continues until Husband's death and provides survivor benefit coverage for Wife, whether Husband dies before or after his retirement age. And the parties' settlement agreement nullifies and supersedes any option Husband might have otherwise had to cancel Wife's post-retirement survivor benefits once he reaches retirement age. We hold that the dissolution court did not err when it found that Wife is entitled to the survivor benefit during both the pre-retirement and post-retirement periods.

### *Issue Two: Premiums*

[29] Husband next contends that the dissolution court erred when it modified the parties' settlement agreement to add a missing term, namely, the parties' obligation to share the cost of the premiums for the post-retirement survivor coverage. Indiana Code Section 31-15-2-17 (2019) provides in relevant part as follows:

> (a) To promote the amicable settlements of disputes that have arisen or may arise between the parties to a marriage attendant upon the dissolution of their marriage, the parties may agree in writing to provisions for:
>
> * * *
>
> (2) the disposition of any property owned by either or both of the parties; . . . .

(b) In an action for dissolution of marriage:

> (1) the terms of the agreement, if approved by the court, shall be incorporated and merged into the decree and the parties shall be ordered to perform the terms; . . . .

(c) The disposition of property settled by an agreement described in subsection (a) and incorporated and merged into the decree is not subject to subsequent modification by the court, except as the agreement prescribes *or the parties subsequently consent*.

(Emphasis added).

[30] Husband consented to the court's determination of how survivor benefit premiums will be paid and does not challenge the dissolution court's order that each party pay fifty percent of the premiums for the pre-retirement survivor benefits. On appeal, however, Husband contends that he "never agreed to designate Wife as the beneficiary" of post-retirement survivor benefits and that, "[a]bsent an express provision in the agreement to the contrary," Wife has "waived any entitlement to [a] survivor or a beneficiary right" derived from Husband's military retired pay. Appellant's Br. at 16. In other words, Husband contends that after he reaches retirement age, Wife is entitled only to her coverture fraction of his military retired pay and nothing else.

[31] As with Issue One, Husband's challenge to the order that he pay premiums for post-retirement coverage turns on the premise that the settlement agreement provides for only pre-retirement survivor benefits. We have concluded otherwise, that the QDRO provides without qualification that Husband shall

elect "survivor coverage for Wife" and that the agreement includes both pre-retirement and post-retirement survivor benefits. And Wife has not waived her entitlement to those benefits expressly provided for in the agreement. We conclude that the court has properly interpreted the agreement and, with the consent of the parties, has only modified the agreement to provide for how the survivor benefit coverage premiums will be paid.

## *Conclusion*

[32] At the hearing on Wife's motion for court intervention, the parties agreed that the cost of the premiums for the survivor benefit plan had not been accounted for in the settlement agreement, and they consented to have the court determine who should pay the premiums for that coverage. As such, on the question of who should pay the premiums, the parties consented to the court's subsequent modification of their agreement. Husband's assertion on appeal that the modification violated the terms of the parties' agreement because he only agreed to pre-retirement survivor coverage is incorrect. Both the text of the agreement and the corresponding DOD regulations providing for former spouse survivor coverage demonstrate otherwise. In response to Husband's motion to clarify, the dissolution court did not err when it held that under the agreement Wife is entitled to both pre-retirement and post-retirement survivor benefits and that the parties shall each pay fifty percent (50%) of the premiums for that coverage.

[33] Affirmed.

Kirsch, J., and Brown, J., concur.